Robert SOLOMON, Plaintiff Below, Appellant,

v.

PATHE COMMUNICATIONS CORPORATION, Credit Lyonnais Bank Nederland N.V., Dennis Stanfill, Alan Ladd, Jr., Charles Meeker, Rene Claude Jouannet, Bahman Naraghi, and Guy Etienne Dufour, Defendants Below, Appellees.

No. 240, 1995.

Supreme Court of Delaware.

Submitted: Nov. 14, 1995.

Decided: Jan. 4, 1996.

---

Seth D. Rigrodsky (argued), and Irving Morris, Morris and Morris, Wilmington, for Appellant.

Samuel A. Nolen (argued), and Scott R. Haiber, Richards, Layton & Finger, Wilmington; White & Case, of counsel, New York City, for Appellees.

Before HOLLAND, HARTNETT, and BERGER, JJ.

HARTNETT, Justice.

In this appeal, we affirm the dismissal of this action by the Court of Chancery which

held that the complaint fails to state a claim upon which relief can be granted.

## I.

The suit dismissed is a putative shareholder class action that challenges the fairness of a tender offer made by Credit Lyonnais Banque Nederland N.V. ("CLBN") to purchase 5.9 million shares of the publicly traded common stock of Pathe Communications Corporation ("Pathe"). The tender offer was proposed in conjunction with CLBN's planned foreclosure on a security interest it held. The Plaintiff–Appellant, Robert Solomon ("Solomon"), is a shareholder who purportedly represents a class holding ten percent of Pathe's common stock.

CLBN is a Netherlands corporation. Giancarlo Parretti ("Parretti") was the Chief Executive Officer of Pathe when it purchased MGM/UA Communications Corporation ("MGM"). The purchase price was funded principally by loans from CLBN totalling approximately one billion dollars. As part of this loan transaction, CLBN took a perfected security interest in eighty-nine percent of Pathe's stock and ninety-eight percent of MGM's stock. Additionally, in exchange for the granting of credit, CLBN acquired the right, under two voting trust agreements, to vote 89.5% of Pathe's shares and substantially all of MGM's shares.

Subsequently, CLBN exercised its voting rights by removing Parretti and three other directors from the MGM and Pathe boards. In an action instituted by CLBN, brought pursuant to 8 Del.C. § 225, to verify the validity of this action, the Court of Chancery held that the removal of these individuals was proper. Soon thereafter, Parretti obtained an Italian court order contradicting the Court of Chancery's decision. As a result of this action, and because of other alleged defaults, CLBN foreclosed on the stock of both corporations.

In connection with the planned foreclosure, CLBN sent a letter notifying Pathe of its intention to foreclose. To help ensure that Pathe would not attempt to delay the foreclosure, CLBN offered to make a tender offer for an unspecified number of Pathe's publicly held shares of common stock. In response, Pathe appointed a special committee to review the proposal with the assistance of its own legal and financial advisers.

On May 1, 1992, Pathe and CLBN executed an agreement in which Pathe agreed not to delay the foreclosure. In turn, CLBN agreed to make a public tender offer of $1.50 per share for up to 5.8 million of Pathe's publicly held shares. CLBN then initiated the foreclosure by announcing that a public auction for the shares subject to the foreclosure would take place on May 7, 1992. On May 7th, CLBN also made the promised tender offer for the Pathe shares.

One day prior to the announcement of the tender offer, Solomon filed the present action. On March 14, 1994, he amended his complaint to assert a purported class action. The amended complaint asserted that the tender offer was unfair to all shareholders (except the Defendants) who tendered their shares in response to the tender offer. Additionally, it asserted that the tender offer price was "coercive" and amounted to a breach of loyalty by CLBN as controlling shareholder of Pathe and MGM. Solomon also asserted in his amended complaint that the Pathe Board was under the control of CLBN; that the Defendants exhibited impropriety by failing to retain independent advisers; and that the Defendants failed "to assure that no conflict of interest existed."

CLBN moved, pursuant to Chancery Rule 12(b), to dismiss the suit, arguing that (1) the complaint failed to state a claim upon which relief could be granted; (2) the Court of Chancery lacked personal jurisdiction over CLBN; and, (3) service of process upon CLBN was ineffective. The other Defendants moved to dismiss only on the grounds that the complaint failed to state a claim under Rule 12(b)(6). The Court of Chancery granted the motion to dismiss for failure to state a claim under Chancery Rule 12(b)(6), but did not decide the issues of personal jurisdiction and service of process.[1] By later

---

1. The Chancellor discussed, in a footnote, the sufficiency of the service of process issue as to CLBN. He indicated that the service was not sufficient. Nevertheless, he did not expressly

order, the Court of Chancery specified that the dismissal was with prejudice.

## II.

In this appeal, we must examine the standard used by the Court of Chancery in considering a Chancery Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted. Solomon contends that the Chancellor incorrectly applied a heightened pleading standard when considering the Rule 12(b)(6) motion because he used a standard similar to the "pleading with particularity" requirement for shareholder derivative suits as set forth in Chancery Rule 23.1.

Rule 23.1 states, in part:

The complaint shall also allege **with particularity** the efforts, if any, made by the plaintiff to obtain the action the plaintiff desires from the directors or comparable authority and the reasons for the plaintiff's failure to obtain the action or for not making the effort (emphasis added).

In support of his position, Solomon focuses on the Chancellor's statement in his opinion dismissing this suit that "the propensity for frivolous litigation in shareholder, class action suits requires the application of the pleading test **under Rule 12 with special care.**" *Solomon v. Pathe Communications Corp.*, Del. Ch., C.A. No. 12,563, Allen, C., slip op. at 11 1995 WL 250374, *4 (Apr. 21, 1995) (emphasis added).[2]

Solomon further asserts that, even if the Chancellor did not state a new standard calling for the enhanced scrutiny of complaints in shareholder class actions, he erred, as a matter of law, in finding that the complaint failed to state a claim upon which relief could be granted. Solomon claims that if the benefit of all reasonable inferences are given to the allegations in this complaint, the complaint must survive the motion to dismiss. His arguments are without legal basis.

## III.

Whether the Chancellor properly decided the Chancery Rule 12(b)(6) motion to dismiss is a question of law. As such, it is subject to *de novo* review by this Court. *Precision Air, Inc. v. Standard Chlorine of Del., Inc.*, Del.Supr., 654 A.2d 403, 406 (1995); *Unitrin, Inc. v. American Gen. Corp.*, Del.Supr., 651 A.2d 1361, 1385 (1995).

## IV.

Solomon's argument that the Chancellor's decision was incorrect because it was based on a "special care" standard is unpersuasive. Although we agree that "special care" is not part of the test for reviewing a Chancery Rule 12(b)(6) motion, we find that the Chancellor applied the correct standard of review. That standard requires that when evaluating a motion to dismiss for failure to state a claim, the truthfulness of all well-pleaded allegations in the complaint is to be assumed. *Grobow v. Perot*, Del.Supr., 539 A.2d 180, 187 n. 6 (1988). Further, the court must give the pleader "the benefit of all reasonable inferences that can be drawn from its pleading." *In re USACafes, L.P. Litig.*, Del. Ch., 600 A.2d 43, 47 (1991). Additionally, a motion to dismiss, at such a preliminary stage, requires the court to determine with "reasonable certainty" that a plaintiff could prevail on no set of facts that can be inferred from the pleadings. *Id.* (citing *Rabkin v. Philip A. Hunt Chemical Corp.*, Del.Supr., 498 A.2d 1099, 1104 (1985)). The complaint itself need "only give general notice of the claim asserted. . . ." *Rabkin*, 498 A.2d at 1104. However, "[c]onclusions . . . will not be accepted as true without specific allegations of fact to support them."

decide the motions to dismiss for lack of personal jurisdiction or insufficiency of process.

2. The Chancellor stated:
   It is a fact evident to all of those who are familiar with shareholder litigation that surviving a motion to dismiss means, as a practical matter, that economical rational defendants (who are usually not apt to be repeat players in these kinds of cases) will settle such claims, often for a peppercorn and a fee. This fact causes one to apply the pleading test under Rule 12 with special care in such suits. The court cannot be satisfied with mere conclusions, as it might, for example, in an auto-accident case, because in this sort of litigation the risk of strike suits means that too much turns on the mere survival of the complaint.

*In re Tri–Star Pictures, Inc., Litig.,* Del. Supr., 634 A.2d 319, 326 (1995). *See also Grobow,* 539 A.2d at 187 n. 6.

In the context of the Chancellor's entire opinion and the record, we hold that the Chancellor's use of the words "special care" did not establish a new standard for reviewing a Chancery Rule 12(b)(6) motion to dismiss a class action complaint, and, therefore, does not constitute legal error. Rather, it reflects the Chancellor's intent to carefully review a class action complaint when a motion to dismiss for failure to state a claim is being considered. The Chancellor's use of the "special care" terminology was merely a recitation of how the standard should be applied by a judge carefully attempting to ensure that a complaint is not prematurely dismissed, but is dismissed only if it is based entirely on unsupported conclusions. *Grobow,* Del.Supr., 539 A.2d at 187 n. 6.

Delaware courts have recognized that the standard to be used to evaluate a Chancery Rule 12(b)(6) motion is less stringent than the standard applied when evaluating whether a pre-suit demand has been excused in a stockholder derivative suit filed pursuant to Chancery Rule 23.1. *See Levine v. Smith,* Del.Supr., 591 A.2d 194, 207 (1991); *Grobow v. Perot,* Del. Ch., 526 A.2d 914, 920 (1987), *aff'd,* Del.Supr., 539 A.2d 180 (1988). Chancery Rule 23.1 requires the pleading of facts with "particularity" in a shareholder derivative suit. On the other hand, the standard used to review a Chancery Rule 12(b)(6) motion to dismiss a shareholder class action suit is consistent with the notice pleading concept of Chancery Rule 8(a). *Levine v. Smith,* Del.Supr., 591 A.2d at 207. Rule 8(a) requires that the complaint need "only give general notice of the claim asserted...." *Rabkin,* 498 A.2d at 1104. There is nothing in the Chancellor's opinion to indicate that he departed from this well-settled standard.

### V.

After a careful review of the amended complaint, we agree with the Chancellor that it fails to state a claim upon which relief can be granted. As the Chancellor found, the amended complaint does not allege facts, which, if taken as true, state a claim which would entitle the class to relief.

■ The amended complaint contains two counts. Count I attempts to assert a claim for the breach of the duty of care by the individual Defendants by alleging that: (1) they did not negotiate a sufficient tender offer price for the shares; and (2) they elected not to dispute the foreclosure by CLBN. These conclusory statements standing alone do not state a claim upon which relief can be granted. No other facts are alleged to show a breach of duty of care by the Defendants. The Chancellor correctly found that Count I is supported only by conclusory allegations with no independent facts being alleged to support them. Count I is therefore devoid of any factual allegation that could support a cause of action and was correctly dismissed.

■ Count II also does not state a claim upon which relief could be granted. It attempts to assert a breach of the duty of fair dealing by the directors because they did not oppose the tender offer. The asserted unfairness of the tender offer is based on its allegedly inadequate price. The Chancellor's holding that none of the facts cited by Solomon "can be said to arouse as much as a fleeting doubt of the fairness of the foreclosure or the $1.50 tender offer" price is correct as a matter of law.

■ In the case of totally voluntary tender offers, as here, courts do not impose any right of the shareholders to receive a particular price. *Lynch v. Vickers Energy Corp.,* Del. Ch., 351 A.2d 570, 576 (1976), *rev'd on other grounds,* Del.Supr., 383 A.2d 278 (1977); *Weinberger v. U.O.P., Inc.,* Del.Supr., 457 A.2d 701, 703 (1983). Delaware law recognizes that, as to allegedly voluntary tender offers (in contrast to cash-out mergers), the determinative factor as to voluntariness is whether coercion is present, or whether there is "materially false or misleading disclosures made to shareholders in connection with the offer." *Eisenberg v. Chicago Milwaukee Corp.,* Del.Ch., 537 A.2d 1051, 1056 (1987) (citations omitted). A transaction may be considered involuntary, despite being voluntary in appearance and form, if one of these factors is present. *Id.* There is no

well-plead allegation of any coercion or false or misleading disclosures in the present case, however.

Moreover, in the absence of coercion or disclosure violations, the adequacy of the price in a voluntary tender offer cannot be an issue. *Weinberger*, 457 A.2d at 703; *Lynch*, 351 A.2d at 576. Solomon has plead no facts from which there could be drawn a reasonable inference that there was coercion or lack of complete disclosure. The amended complaint focuses mainly on a conclusory allegation that coercion was present. The complaint, therefore, falls well short of the minimum notice requirements. "Conclusions ... will not be accepted as true without specific allegations of fact to support them." *In re Tri-Star Pictures, Inc.*, 634 A.2d at 326 (citation omitted). Count II also does not state facts that could support a viable claim and, therefore, the amended complaint was properly dismissed by the Chancellor.

## VI.

Somewhat troublesome is the Chancellor's decision to dismiss the action based on the Chancery Rule 12(b)(6) motions, before addressing the merits of the motion to dismiss based on lack of personal jurisdiction and insufficiency of service of process. CLBN moved to dismiss the complaint based on an asserted failure to state a claim and the lack of personal jurisdiction and insufficiency of service of process. All the other Defendants moved to dismiss the suit only for failure to state a claim pursuant to Chancery Rule 12(b)(6). The Chancellor granted the motion to dismiss pursuant to Rule 12(b)(6) without ruling on the jurisdictional or service of process issues.

■ This Court has held that a challenge based on lack of personal jurisdiction as to a defendant (Rule 12(b)(2)) must be ruled upon before a motion to dismiss for failure to state a claim under Rule 12(b)(6) can be considered. *Branson v. Exide Electronics Corp.*, Del.Supr., 625 A.2d 267, 269 (1993). In *Branson*, we reviewed a dismissal of a class action suit under Chancery Rule 12(b)(6). At trial, the defendants had moved to dismiss based on both lack of personal jurisdiction and failure to state a claim for which relief

can be granted. *Id.* at 268. The Court of Chancery dismissed the class action suit pursuant to the Rule 12(b)(6) motion, while not ruling on the personal jurisdiction issue. On appeal, this Court remanded the case for the Court of Chancery to assess personal jurisdiction after deciding that:

> A court without personal jurisdiction has no power to dismiss a complaint for failure to state a claim.... The Court of Chancery erred by granting the individual defendants' Rule 12(b)(6) motions to dismiss for failure to state a claim, without first ruling expressly upon the individual defendants' 12(b)(2) motions to dismiss for lack of personal jurisdiction.

*Id.* at 269 (citations omitted).

In *Branson*, the Chancery Rule 12(b)(2) and 12(b)(6) motions, however, were raised by all the defendants. *Id.* at 268. In contrast, only CLBN moved to dismiss on jurisdictional grounds in addition to moving to dismiss for failure to state a claim. Pathe and the individual Defendants did not challenge the Chancery Court's jurisdiction, but merely moved to dismiss the amended complaint for failure to state a claim.

■ As a general rule, jurisdictional matters should be decided before substantive matters. *Branson*, 625 A.2d at 269 (stating that "a court's finding of personal jurisdiction is ... a condition precedent to a proper exercise of its own judicial authority."). In the present case, however, judicial economy mandates that there be an exception to this rule. In light of our holding that the complaint fails, as a matter of law, to state a claim against any of the Defendants, it would serve no purpose to remand this case to the Chancellor for a ruling on the Rule 12(b)(2) motion filed by only one defendant to dismiss on jurisdictional grounds.

## VII.

For the foregoing reasons, the Court of Chancery's dismissal of Solomon's claim under Rule 12(b)(6) for failure to state a claim

upon which relief can be granted is AFFIRMED.