**IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE**

|  |  |  |
|---|---|---|
| | ) | |
| Deutsche Bank National Trust Company, as | ) | C.A. No. 10361-MA |
| Trustee for WaMu Mortgage Pass-Through | ) | |
| Certificates Series 2006-AR3 Trust, | ) | |
| Assignee of Washington Mutual Bank, F.A. | ) | |
| Plaintiffs, | ) | |
| v. | ) | |
| | ) | |
| Helene Hines, Jeffrey Hines, and George | ) | |
| Edward Kennedy | ) | |
| Defendants. | ) | |

**MASTER'S REPORT**

Date Submitted:  June 11, 2015
Draft Report:
Final Report:  September 17, 2015

This *in rem* mortgage foreclosure case was originally filed in the Superior

Court in and for Sussex County on April 30, 2009,[1] and was refiled in this Court

on November 27, 2014.[2]  Pending before me are two motions.  Defendant George

Edward Kennedy has moved to dismiss the complaint while Plaintiff Deutsche

Bank National Trust Company, as trustee for WaMu Mortgage Pass-Through

Certificates Series 2006-AR# Trust, assignee of Washington Mutual Bank, F.A.

---

[1] *Deutsche Bank National Trust Co. v. Hines, et al.*, C.A. No. S09L-04-115 THG (Del. Super.), Docket Item ("DI") 1.
[2] *Deutsche Bank National Trust Co. v. Hines, et al.*, C.A. No. 10361-MA, (Del. Ch.) DI 1.

has moved for summary judgment.[3]  For the reasons that follow, I recommend the denial of both motions.

Factual and Procedural Background

The background of this case is lengthy and somewhat complicated.  On June 7, 2004, Defendant Helene Hines conveyed real property located at 302 S. Ocean Drive, South Bethany, Delaware (hereinafter "the Property"), to Villa Oceana, LLC.[4]  Thereafter, by deed dated February 25, 2005, Villa Oceana, LLC conveyed the Property to Defendants Jeffrey Hines and Helene Hines as tenants by the entirety.[5]  Ten months later, on December 30, 2005, Helene Hines borrowed $1,598,977 from Washington Mutual Bank, F.A. (hereinafter "Washington Mutual") and executed an adjustable rate note (hereinafter the "Note") for that amount in favor of Washington Mutual.[6]  On the same date, Helene Hines and Jeffrey Hines executed a mortgage using the Property as security for the Note. [7]

On April 15, 2009, Washington Mutual, through its successor in interest, JPMorgan Chase Bank, N.A. (hereinafter "JPMorgan Chase"), assigned its right in the mortgage and Note to Plaintiff,[8] and on April 30, 2009, Plaintiff filed its original mortgage foreclosure complaint in the Superior Court.  On June 24, 2009,

---

[3] *Id.* at DI 9 & 19.
[4] Motion for Summary Judgment, Ex. E.
[5] *Id.*
[6] Complaint, Ex. A.
[7] *Id.* at Ex. B.

Jeffrey Hines and Helene Harris (formerly Hines, hereinafter simply "Helene") conveyed the Property to Helene as sole owner.[9] On October 6, 2009, a default judgment in the amount of $1,804,987.89 was entered against Jeffrey Hines and Helene.[10] A sheriff's sale was scheduled for February 16, 2010, but was stayed on December 23, 2009.[11] A second sheriff's sale was scheduled to take place on March 20, 2012, but was also stayed.[12]

In the meantime, on October 14, 2011, Helene conveyed the Property to 302 S. Ocean Drive, LLC, a Delaware limited liability company (hereinafter "302 LLC").[13] On November 5, 2012, 302 LLC moved to intervene in the Superior Court mortgage foreclosure action as a necessary party under 10 *Del. C.* § 5061(b).[14] According to the motion to intervene, 302 LLC's managing member, George Kennedy, had been negotiating with JPMorgan Chase to assume and

---

[8] *Id.* at Ex. C.
[9] Motion for Summary Judgment, Ex. E.
[10] *Deutsche Bank v. Hines*, C.A. No. S09L-04-115 THG (Del. Super.). DI 3.
[11] *Id.,* DI 6.
[12] *Id.*, DI 8.
[13] Motion for Summary Judgment, Ex. E.
[14] *Deutsche Bank v. Hines*, C.A. No. S09L-04-115 THG (Del. Super.). DI 10. 10 *Del. C.* § 5061(b) provides:
(b)   In addition to the mortgagor, and such mortgagor's heirs, executors, administrators or successors, the following persons shall be necessary parties in every mortgage foreclosure action:
(1)   Record owners acquiring title subject to the mortgage (terre tenants) which is being foreclosed upon; and

modify the existing loan. In anticipation of a settlement, over $100,000 allegedly had been invested in the Property for repairs in order to lease the Property to produce income, but JPMorgan Chase then backed away from the deal. 302 LLC was seeking to intervene in the foreclosure action in order to protect its interest in the Property. During a hearing on November 16, 2012, the Superior Court judge inquired as to the membership of 302 LLC.[15] Upon learning that Helene and Kennedy were the only two members, the judge denied the motion, stating:

> She lost the property. This is kind of a backdoor. He does not have any standing. He bought it. He bought it subject to what her rights were. They [sic] are no rights. So, if he has a complaint with the bank about something, he can, I guess, go to Chancery Court because he does not have anything in writing.[16]

Another sheriff's sale was scheduled to place on April 16, 2013. Kennedy moved *pro se* for an emergency stay of the sheriff's sale on April 11, 2013.[17] Attached to Kennedy's motion was a copy of a complaint he had filed that same day in the Baltimore City Circuit Court of the State of Maryland in and for Baltimore City against JPMorgan Chase, its president, Jamie Dimon, Plaintiff, and

---

(2) Persons having an equitable or legal interest of record, including an interest pursuant to a judicial sale or a statutory sale pursuant to § 8771 et seq. of Title 9.

[15] Transcript of Proceedings on November 16, 2012, at 6, DI 16.

[16] *Id.* at 6-7.

[17] DI 15. A second *pro se* motion for an emergency stay of this sale was filed by Douglas J. Appling, a realtor whose company had been managing the Property for several years and allegedly stood to lose approximately $60,000 in rental income if

several other individuals and entities, alleging fraud, unjust enrichment, and conspiracy.[18] During a teleconference on April 15th, Kennedy informed the Court that 302 LLC had been created with the consent of JPMorgan Chase for the sole purpose of assuming and modifying the 1.9 million dollar loan, and the Property had to be transferred into 302 LLC with Helene owning 80 percent interest in this limited liability company and Kennedy holding the remaining 20 percent interest.[19] After the loan modification process was completed, Kennedy was to become the sole member of 302 LLC and Helene would be relieved of responsibility under the Note. The Superior Court denied the motion, informing Kennedy:

> You're talking about what happened six months ago. And, tomorrow, the sale is scheduled. And you went into this with your eyes wide open that there was a risk. …. Unless … the mortgage holder wants to stay this sale, it's going forward. You had an intervenor motion. You lost the intervenor motion. Now, you're filing a motion the day before … or, excuse me, you filed it three business days before the sale. The record is what the record is.

---

the Property was sold in foreclosure. DI 18. The Superior Court also denied Appling's motion. DI 19.

[18] According to the copy of the complaint attached to his *pro se* motion, Kennedy filed the Maryland complaint in his capacity as manager of 302 LLC and in his individual capacity. DI 15. Exhibit A of the Maryland complaint was a document purporting to be an agreement for sale of the Property between Helene as seller and Kennedy, in his capacity as Trustee for AVP Investment Trust Co., Inc., as buyer with a purchase price of $1,910,865. Other than the payment of a $500 deposit, the balance of the purchase price was to be financed over 30 years. The agreement was subject to a financing addendum stating that the agreement of sale was subject to the satisfactory negotiation of a new loan between Kennedy and JPMorgan Chase, but Helene had the right to withdraw up to $10,000 from the rental escrow funds held by Sandcastle Realty, Inc. at any time before settlement, which was to be held on September 30, 2011.

[19] Transcript of teleconference on April 15, 2013, at 5-8. DI 20.

Everybody's known that this property's in foreclosure. And there is nothing that requires anybody to, basically, put their money on the table and say, [w]e're going to lend to the new party. That's not the case. You don't have a deal until you've got something in writing, sir. …. Unless you've got a written contract, sir, you don't have a deal.[20]

On April 16, 2013, the Sheriff's Sale took place, and Plaintiff was the highest bidder, purchasing the Property for $1,477,040.[21] On April 22, 2013, Kennedy filed a *pro se* Notice of Filing of Case in Bankruptcy Court.[22] Kennedy had filed for bankruptcy under Chapter 11 in the Baltimore Division of the United States Bankruptcy Court for the District of Maryland on April 15, 2013, and listed the Property as his principal asset.

Thereafter, on May 1st, Kennedy filed a *pro se* motion to set aside the sheriff's sale and to compel Plaintiff and/or JPMorgan Chase "to produce original 'Wet Blue Ink' Chain of Title Documentation from Loan Origination Date to Today."[23] As grounds for his motion, Kennedy alleged: (1) no notice to record title holder; (2) no notice to party with equitable interest; (3) no notice to tenants holding a leasehold estate; (4) defective chain of title; (5) violation of automatic bankruptcy stay; (6) fraud upon the court; and (7) breach of contract. The Superior Court denied the motion to compel, but would not confirm the sale until

---

[20] *Id.* at 8-9.
[21] DI 21.
[22] DI 22.
[23] DI 23.

there was proof that 302 LLC had been given notice of the sheriff's sale at its registered address.[24]

A hearing on this issue was scheduled for July 18, 2013,[25] but in a letter dated May 30, 2013, Plaintiff informed the Court that it had not properly noticed 302 LLC.[26] In the interest of judicial economy and to avoid further litigation costs, Plaintiff requested permission to file a new levari facias and direct the Sheriff to schedule a new sale. In his *pro se* response to this letter, Kennedy renewed his request for proof of chain of title and accused Plaintiff's counsel of perjury and committing a fraud upon the Court.[27] Kennedy attached to his response documents purporting to show, *inter alia*: (1) Helene's assignment of 20 percent of her interest in 302 LLC to Kennedy on October 13, 2011; (2) Helene's assignment of her remaining interest in 302 LLC to Kennedy on April 24, 2013; (3) an agreement to transfer all interest in 302 LLC from Helene to Kennedy dated April 23, 2013; (4) a deed dated May 29, 2013, conveying the Property from 302 LLC to Kennedy, with a receipt from the Sussex County Recorder of Deeds dated May 29, 2013; and

---

[24] Transcript of Proceeding on May 16, 2013, at 14, 19-21. D127. 302 LLC had a registered address at 406 S. Bedford Street, Georgetown, Delaware 19947, which was the address of Smith Feinberg McCartney & Berl, LLP.
[25] DI 26
[26] DI 31
[27] DI 34.

(5) a State of Delaware realty transfer tax return and affidavit of gain and value showing consideration for the sale of the Property in the amount of $1,910,865.[28]

The Superior Court summarily rejected Kennedy's filings, ruling "Mr. Kennedy is not a party and can't represent the LLC."[29] On June 18th, the Superior Court approved Plaintiff's request to file a new levari facias and direct that the Sheriff schedule a new sale.[30] Nearly a year and a half later, on November 17, 2014, Plaintiff filed a notice of an election to transfer the case to this Court after belatedly discovering that the mortgage was not under seal.[31] Kennedy filed a *pro se* response to the notice, arguing that Plaintiff had already filed a new case in Chancery Court and that by doing so, Plaintiff had rendered invalid the default judgment lien entered on October 6, 2009.[32] Kennedy asked the Superior Court to remove the default judgment lien and the mortgage instrument from the Sussex County land records.[33] At a hearing on January 2, 2015, Superior Court approved Plaintiff's election to transfer, and agreed to clear the judgment, but informed Kennedy that it could not clear the mortgage.[34] By order dated January 5, 2015,

---

[28] *Id.*
[29] DI 35.
[30] DI 36.
[31] DI 38.
[32] DI 40.
[33] DI 41.
[34] DI 42.

Superior Court granted the election and vacated the default judgment without prejudice.[35]

The mortgage foreclosure complaint filed in this Court on November 17, 2014, names Helene, Jeffrey Hines, and Kennedy as defendants.[36] The complaint alleges that (a) the defendants failed to pay the monthly installments on the mortgage when due, (b) payment was demanded, and (c) defendants were informed of Plaintiff's intent to accelerate the balance if the arrearages were not paid. On December 24, 2014, Kennedy filed a *pro se* answer, alleging that (a) the action violates bankruptcy law, (b) he is not a defendant and does not owe Plaintiff any money, and (c) neither Helene nor Jeffrey Hines has been properly served. On March 24, 2015, I granted Plaintiff's motion for service by publication and posting as to Helene and Jeffrey Hines,[37] and on May 14th, I granted an order for a default judgment against Helene and Jeffrey Hines in the principal amount of $1,718,748.18 plus fees and interest.[38] Meanwhile, on March 30th, Plaintiff filed its summary judgment motion. On May 22nd, Kennedy moved to dismiss the

---

[35] DI 44.

[36] *Deutsche Bank National Trust Co., v. Hines, et al.*, C.A. No. 10361-MA, (Del. Ch.). DI 1.

[37] DI 8.

[38] DI 18.

complaint under Court of Chancery Rule 12(b)(6), and filed his opposition to Plaintiff's motion for summary judgment.[39]

Issues Presented

Plaintiff's main arguments in support of its summary judgment motion are: (1) there is no dispute the debt was owed and the mortgage was properly accelerated; (2) the foreclosure action does not violate bankruptcy law because Kennedy's bankruptcy petition was dismissed; and (3) Kennedy is a necessary party to this action because he is the current record owner of the Property. Kennedy sets forth several grounds for why the complaint should be dismissed. First, Kennedy contends that the current complaint violates the doctrine of *laches* because the last payment on the mortgage by Helene and Jeffrey Hines occurred around September 2008, more than six years prior to the complaint's filing. Second, according to Kennedy, Plaintiff must have known that the mortgage was not sealed or notarized during the five years that it was prosecuting the foreclosure action in Superior Court; as a result, Kennedy now accuses Plaintiff of having unclean hands. Third, Kennedy argues that Plaintiff had not been authorized to transfer the Superior Court action when Plaintiff filed its complaint in this Court on November 17, 2014, and fourth, that Plaintiff violated bankruptcy law when it took affirmative steps to forward this litigation while an automatic bankruptcy stay was

---

[39] DI 19 & 20. Counsel entered an appearance on behalf of Kennedy in this case

in place. Finally, Kennedy argues that equity will not permit a successor to the mortgagee to enforce a lien against the successor to the mortgagor, citing *Monroe Park v Metropolitan Life Insurance Company*.[40] Kennedy repeats these arguments in opposing Plaintiff's motion for summary judgment. In addition, Kennedy argues that summary judgment should be denied because proper proof of acceleration is lacking, and there exist several genuine issues of material fact, including whether: (a) the promissory note is a forgery or fabrication, (b) the original parties intended to create an equitable lien, and (c) equity will enforce a purported equitable lien against someone who is not an original party to the contract.

Analysis

Rule 12(b)(6) provides that a complaint may be dismissed by the Court if the plaintiff is not entitled to relief under any set of facts stated or that can reasonably be inferred from the complaint.[41] The only ground asserted by Kennedy that falls within the scope of Rule 12(b)(6) is the last one, i.e., that a court of equity will not impress an equitable lien against a successor to the original mortgagor. The other grounds raised by Kennedy are simply defenses to the complaint that were not pled – or not effectively pled as such - in Kennedy's original *pro se*

---

on April 15, 2015. DI 11.
[40] *Monroe Park v. Metropolitan Life Ins. Co.*, 457 A.2d 734 (Del. 1983).
[41] *Solomon v. Pathe Communications Corp.,* 672 A.2d 35, 38 (Del. 1996).

answer. Since Kennedy has opposed Plaintiff's summary judgment motion on the same ground by arguing that there exists a genuine issue of material fact whether equity will enforce an equitable lien against a successor to the original mortgagor, it is more efficient to analyze this issue under Court of Chancery Rule 56. That standard of review is well known. Summary judgment may be granted if the record shows that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.[42] If the moving party meets this burden, then the burden shifts to the nonmoving party to demonstrate that there are genuine issues of material fact that require resolution at trial.

The mortgage document, recorded in the Sussex County Recorder of Deeds Office on January 11, 2006, in Deed Book 8391 at page 291, lacks a seal and is not a legal mortgage.[43] Nevertheless, a court of equity will ignore technical defects like the absence of a seal, and enforce the mortgage between the parties.[44] The parties to the mortgage document in this case were Washington Mutual and Helene and Jeffrey Hines. Plaintiff is the assignee of the original Mortgagee.[45] Kennedy purports to be a bona fide purchaser for value of the Property from a successor

---

[42] Ct. Ch. R. 56(c).

[43] *See Monroe Park*, 457 A.2d at 736 & n.7.

[44] *Id.* at 736 ("The equitable power to disregard defects in the execution of a mortgage is based upon two equitable maxims. First, equity regards substance rather than form. Second, equity regards that as done which in good conscience ought to be done.") (citations omitted).

[45] Complaint, Ex. C.

(302 LLC) to one of the original Mortgagors (Helene). Equitable liens are impressed "to prevent unjust enrichment, i.e., where it would be contrary to equity and good conscience for an individual to retain a property interest acquired at the expense of another."[46] Whether Kennedy would be unjustly enriched if the Court were to dismiss Plaintiff's *in rem* foreclosure action is a material fact that cannot be determined without a thorough investigation into the circumstances surrounding the recent conveyances of the Property. Since a genuine issue of material fact exists, Plaintiff's motion for summary judgment, as well as Kennedy's motion to dismiss, should be denied.

This foreclosure action has been pending since 2009. To move this case along, I am waiving a draft report and issuing my recommendation as a final report. The parties are referred to Court of Chancery Rule 144 for the process of taking exception to a Master's Final Report. When this report becomes a final order of the Court, the parties should confer and stipulate to a case scheduling order.

Respectfully,

/s/ Kim E. Ayvazian

Kim E. Ayvazian
Master in Chancery

KEA/kekz

---

[46] *Branca v. Branca,* 443 A.2d 929, 931 (Del. 1982).