## IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

KRISTIN LAWVER,                              )
                                             )
        Plaintiff-Below, Appellant,          )
                                             )
        v.                                   )   C.A. No. N16A-05-011 JRJ
                                             )
CHRISTIANA CARE HEALTH                       )
SYSTEM, INC.,                                )
                                             )
        Defendant-Below, Appellee.           )

## OPINION

Date Submitted: December 13, 2016
Date Decided: February 21, 2017
Date Corrected: March 17, 2017

*Upon Appeal from the Decision of the Court of Common Pleas*: **REVERSED.**

Cara E. Williams, Esquire, MacElree Harvey, Ltd., 5721 Kennett Pike, Centreville, DE. Attorney for Plaintiff-Below, Appellant.

Justin K. Victor, Esquire, Morgan, Lewis & Bockius LLP, The Nemours Building, 1007 N. Orange Street, Suite 501, Wilmington, DE, Michael J. Ossip, Esquire (*pro hac vice*), Morgan Lewis & Bockius LLP, 1701 Market Street, Philadelphia, PA. Attorneys for Defendant-Below, Appellee.

**Jurden, P.J.**

# I. INTRODUCTION[1]

Plaintiff-Below, Appellant Kristin Lawver has appealed the Court of Common Pleas' May 6, 2016 Memorandum Opinion and Order granting Defendant-Below, Appellee Christiana Care Health System, Inc.'s Motion to Dismiss the Complaint.[2] For the reasons set forth below, the decision of the Court of Common Pleas is **REVERSED.**

# II. BACKGROUND

## A. The Complaint

This dispute arises from Defendant-Below, Appellee Christiana Care Health System, Inc.'s ("Christiana Care") termination of Plaintiff-Below, Appellant Kristen Lawver ("Lawver") from her at-will employment as a medical assistant in the Vascular Department of the Christiana Care Health System.[3] Lawver alleges that her supervisors at Christiana Care "manufactured" her termination in retaliation for "reporting the inappropriate conduct of her direct supervisor's friend," and, therefore, her termination was a breach of the implied covenant of

---

[1] The Court's original Opinion (Trans. ID 60241988) contained two typographical errors. On page five of the Opinion, the word "office" was incorrectly written as "officer," and on page eleven, the word "be" was incorrectly omitted from the first full sentence.

[2] May 6, 2016 Memorandum Opinion and Order on Defendant's Motion to Dismiss (Trans. ID. 59059156); *Lawver v. Christiana Care Health Sys., Inc.*, 2016 WL 2610653 (Del. Com. Pl. May 6, 2016).

[3] Opening Brief of Plaintiff Below Appellant ("Pl.'s Br.") Ex. A, Complaint ("Compl.") (Trans. ID. 59490666).

good faith and fair dealing.[4] The factual allegations contained in the Complaint are as follows.[5]

Lawver began her employment at Christiana Care on May 31, 2012.[6] In December 2012, Karmelia Melvin ("Melvin") a friend of Lawver's supervisor, Linda Colbourne ("Colbourne"), began training Lawver on a new software system.[7] During the training, Melvin "became aggressive, insulting and hostile" towards Lawver.[8] Lawver complained to Colbourne about Melvin's conduct, but Colbourne "dismissed the complaint and took no action."[9] Lawver followed up on her complaint with Employer Relations.[10] Following this incident, Melvin was no longer in the office while Lawver was on duty.[11]

In late December 2012, Lawver was issued a "Step One Reminder" for being late to work three times in December.[12] On May 15, 2013, Lawver was issued a "Step Two Reminder" for being late to work three more times, twice in February

---

[4] Compl. ¶¶ 42–45.
[5] On a motion to dismiss for failure to state a claim, the Court must view all well-pleaded facts alleged in the complaint as true and in the light most favorable to the plaintiff. *See, e.g., Cent. Mortg. Co. v. Morgan Stanley Mortg. Capital Holdings LLC*, 27 A.3d 531, 536 (Del. 2011) (explaining that even vague allegations in a complaint are "well-pleaded" if they provide the defendant notice of the claim and that a motion to dismiss for failure to state a claim should be granted only if the plaintiff could not recover under any reasonably conceivable set of circumstances susceptible of proof).
[6] Compl. ¶ 3.
[7] *Id.* ¶ 6.
[8] *Id.* ¶ 7.
[9] *Id.* ¶ 8.
[10] *Id.* ¶ 9.
[11] *Id.* ¶ 10.
[12] *Id.* ¶ 11.

and once in April.[13] Lawver does not deny that she was late, but points out that Christiana Care inconsistently applied its disciplinary policy, extenuating circumstances excused or justified her lateness, and she was prevented from establishing a record of the foregoing because she was unaware of her rights under Christiana Care's disciplinary policies.[14] For example, Lawver alleges on April 16, 2013, she, like many employees, was a few minutes late because New Employee Orientation Day resulted in a lack of available parking.[15]

The next incident identified by Lawver as pertinent occurred on August 29, 2013, when a non-ambulatory patient was mistakenly locked in a lab room for the day before being discovered.[16] Lawver alleges the lab room was locked by another medical assistant, but on September 4, 2013, Colbourne and Lawver's manager, Patricia White-Murray ("White-Murray"), questioned Lawver about the incident and informed her "she had been named in the nurse practitioner's report to risk management as the individual who had locked the lab room door."[17] Thereafter, Lawver, but not similarly involved co-workers, "was invited to and attended a debriefing with Risk Management" about the incident.[18] As she did following her December 2012 dispute with Melvin, Lawver went to Employer Relations

[13] *Id.* ¶ 16.
[14] *Id.* ¶¶ 4, 12–14.
[15] *Id.* ¶ 18.
[16] *Id.* ¶¶ 21–23.
[17] *Id.* ¶ 25.
[18] *Id.* ¶ 27.

4

regarding the lab room incident.[19] From September 4, 2013, when she reported to Employer Relations, to January 10, 2014, White-Murray "continuously emailed [] Lawver in an abusive and hostile manner."[20]

On January 10, 2014, Lawver was issued a "Decision Making Leave" ("DML").[21] The DML is the next step in Christiana Care's disciplinary program after a Step One and Step Two Reminder.[22] The bases for the DML were that Lawver: (1) forwarded an email inappropriately; (2) refused to report to her supervisor's office after being asked more than once; and (3) was disrespectful to a co-worker.[23] The "inappropriately" forwarded email was an email invitation to an interoffice meeting that Lawver "mistakenly forwarded to a provider, after which [] Lawver immediately notified her supervisor."[24] Lawver contends the forwarding was a harmless mistake that should not have subjected her to disciplinary measures because Christiana Care's email policy is not meant to cover such situations.[25] As to the refusal to report to her supervisor's office, Lawver asserts that she had a conversation with her supervisor about a delay in rooming patients at her workstation, but "at no time did her supervisor insist on meeting in her office."[26]

---

[19] *Id.* ¶ 28.
[20] *Id.* ¶ 29.
[21] *Id.* ¶ 30.
[22] *Id.* ¶ 12.
[23] *Id.* ¶ 30; Compl. Ex. E, DML Disciplinary Action Record.
[24] Compl. ¶ 31.
[25] *Id.* ¶¶ 31–32.
[26] *Id.* ¶ 33.

5

As to disrespect to a co-worker, Lawver alleges that this incident, similar to the second, was "manufactured."[27]

Finally, on October 2, 2014, Melvin was acting as site manager for the day and again treated Lawver in an abusive and aggressive manner, which Lawver reported to Colbourne via email on October 3, 2014.[28] Soon thereafter, on October 7, 2014, Christiana Care terminated Lawver for allegedly failing to follow proper workflow procedures, causing a delay in rooming patients.[29] Lawver contends the delay in rooming was actually caused by factors outside her control, including double and triple booking patients.[30]

Lawver concludes that the foregoing allegations sufficiently plead a claim against Christiana Care for breach of the implied covenant of good faith and fair dealing.[31] Incorporated into the Complaint and attached as exhibits to the Complaint are a number of documents, including the First Step Reminder, Second Step Reminder, DML, and ultimate termination decision.[32]

---

[27] *Id.* ¶ 34.
[28] *Id.* ¶ 38.
[29] *Id.* ¶ 39.
[30] *Id.* ¶ 40.
[31] *Id.* ¶¶ 42–44.
[32] The Complaint and its exhibits are included as Exhibit A of Lawver's Opening Brief. (Trans. ID. 59490666).

## B. Christiana Care's Motion to Dismiss

Upon receipt of the Complaint, Christiana Care moved to dismiss under Court of Common Pleas Civil Rule 12(b)(6), contending that Lawver's Complaint fails to state a claim of breach of the implied covenant of good faith and fair dealing. The Court of Common Pleas agreed, and by its May 6, 2016 Memorandum Opinion and Order, granted Christiana Care's Motion to Dismiss. The Court of Common Pleas emphasized that a claim of breach of the implied covenant of good faith and fair dealing is a narrow exception to the employment-at-will doctrine,[33] and that to survive a motion to dismiss under Rule 12(b)(6), Lawver needed to sufficiently plead that the termination decision constituted "an aspect of fraud, deceit or misrepresentation."[34]

Lawver contends that her claim fits within the recognized application of the implied covenant of good faith and fair dealing to termination decisions where the employer falsifies or manipulates employment records to create fictitious grounds for termination.[35] In evaluating Lawver's argument, the Court of Common Pleas discussed the three formal disciplinary actions taken against Lawver (First Step

---

[33] *Lawver*, 2016 WL 2610653, at *4 ("Delaware courts 'have been reluctant to recognize a broad application of the covenant of fair dealing and good faith out of a concern that the covenant could . . . effectively end at-will employment.'" (quoting *Williams v. Cato Oil*, 2010 WL 3707583, at *4 (Del. Com. Pl. Sept. 7, 2010))).

[34] *Id.* (quoting *Merrill v. Crothall-American, Inc.*, 606 A.2d 96, 101 (Del. 1992)).

[35] Pl.'s Br. at 9–10; *see E.I. DuPont de Nemours & Co. v. Pressman*, 679 A.2d 436, 443–44 (Del. 1996) (explaining that the implied covenant applies "to an act or acts of the employer manifesting bad faith or unfair dealing achieved by deceit or misrepresentation in falsifying or manipulating a record to create fictitious grounds to terminate employment").

7

Reminder, Second Step Reminder, and DML) as well as the ultimate termination for allegedly failing to follow proper workflow procedures, but declined to address the locked lab room incident detailed in the Complaint because the incident "did not actually result in any sort of disciplinary action."[36] The Court of Common Pleas concluded that Lawver failed to state a claim for breach of the implied covenant of good faith and fair dealing because the allegations in the Complaint, when viewed in the light most favorable to Lawver except as contradicted by the documents included by Lawver as exhibits to the Complaint, failed to set forth a viable claim that Christiana Care manipulated or falsified Lawver's employment record. As summarized by the Court of Common Pleas:

> The documentary evidence Plaintiff used in an attempt to strengthen her claims merely demonstrates Plaintiff's belief that her conduct did not warrant disciplinary action, and fails to substantiate her claim that Defendant manufactured the underlying reasons for her termination.[37]

## III. STANDARD OF REVIEW

When this Court reviews a decision of the Court of Common Pleas, "the Court has an obligation to correct errors of law and to review findings of fact 'to determine if they are sufficiently supported by the record and are the product of an

---

[36] *Lawver*, 2016 WL 2610653, at *4 n.25.
[37] *Id.* at *6.

orderly and logical deductive process.'"[38] Whether to grant a motion to dismiss under Court of Common Pleas Civil Rule 12(b)(6) is a question of law subject to *de novo* review.[39]

When evaluating a motion to dismiss pursuant to Rule 12(b)(6), the Court assumes that all well-pleaded allegations in the Complaint are true.[40] "[T]he trial court is not required to accept every strained interpretation of the allegations proposed by the plaintiff, but the plaintiff is entitled to all reasonable inferences that logically flow from the face of the complaint."[41] The trial court may dismiss a claim "if allegations in the complaint or in the exhibits incorporated into the complaint effectively negate the claim as a matter of law."[42] To dismiss a claim at this preliminary stage, the trial court must "determine with 'reasonable certainty' that a plaintiff could prevail on no set of facts that can be inferred from the pleadings."[43]

---

[38] *State v. Anderson*, 2010 WL 4513029, at *4 (Del. Super. Nov. 1, 2010) (quoting *J.S.F. Props., LLC v. McCann*, 2009 WL 1163494, at *1 (Del. Super. Apr. 30, 2009)), *aff'd*, 21 A.3d 52 (Del. 2011).

[39] *Howell v. Persans*, 2012 WL 1414296, at *1 (Del. Super. Feb. 8, 2012).

[40] *Solomon v. Pathe Commc'ns Corp.*, 672 A.2d 35, 38 (Del. 1996) (citing *Grobow v. Perot*, 539 A.2d 180, 187 n.6 (Del. 1988)).

[41] *Malpiede v. Townson*, 780 A.2d 1075, 1083 (Del. 2001) (discussing Court of Chancery Rule 12(b)(6)).

[42] *Id.*; *Furman v. Delaware Dep't of Transp.*, 30 A.3d 771, 774 (Del. 2011) ("[O]nly two exceptions to the general rule prohibiting consideration of such extrinsic material on a motion to dismiss: (i) where an extrinsic document is integral to a plaintiff's claim and is incorporated into the complaint by reference, and (ii) where the document is not being relied upon to prove the truth of its contents." (citing *Vanderbilt Income & Growth Assocs., L.L.C. v. Arvida/JMB Managers, Inc.*, 691 A.2d 609, 613 (Del. 1996))).

[43] *Solomon*, 672 A.2d at 38 (citing *In re USACafes, L.P. Litig.*, 600 A.2d 43, 47 (Del. Ch. 1991)).

## IV. DISCUSSION

### A. Timeliness of Appeal

As an initial matter, Christiana Care argues this Court must dismiss Lawver's appeal because it was not timely filed.[44] Pursuant to Superior Court Civil Rule 72, the deadline for Lawver to file an appeal was May 23, 2016.[45] On May 23, 2016, Lawver filed "Appellant, Kristen Lawver's Notice of Appeal" and "Appellant's Writ – Citation on Appeal for Service upon the Court of Common Pleas Custodian of Records of the May 6, 2016 Decision in the Court of Common Pleas C.A. No. CPU4-16-000307."[46] The documents were assigned a Transaction ID number and copies were served on counsel for Christiana Care.[47] The following day, the Prothonotary rejected the transaction, and on May 25, 2016, Lawver filed a "Notice of Appeal Originally Attempted to be Filed on May 23, 2016 . . . and Rejected by Prothonotary for Incomplete Documents."[48] The Prothonotary accepted this transaction.

Lawver's first attempt to file an appeal was timely, and as the Delaware Supreme Court has previously stated, "the proper purpose of a notice of appeal . . . is to provide notice of the appeal to all litigants who may be directly

---

[44] Defendant/Appellee's Answering Brief at 11 ("Def.'s Resp.") (Trans. ID. 59576205).
[45] Super. Ct. Civ. R. 6(a), 72(b).
[46] Reply Brief of Appellant, Plaintiff-Below, Ex. A Transaction: 59047939 Transaction Receipt from File&Serve Xpress (May 23, 2016) (Trans. ID. 59642675).
[47] *Id.*, Ex. B Transactional Notice from File&Serve Xpress (May 23, 2016).
[48] *Id.*, Ex. D Transaction: 59059156 Transaction Receipt from File&Serve Xpress (May 25, 2016).

affected thereby, and to afford them an opportunity to take action to adequately protect their interests."[49] The Court finds that Lawver provided sufficient notice of appeal to Christiana Care and this appeal should not be dismissed as untimely under Superior Court Civil Rule 72.[50]

## B. Christiana Care's Motion to Dismiss

The employment-at-will doctrine "generally permits the dismissal of employees without cause and regardless of motive."[51] The employment-at-will doctrine is limited in a small number of narrowly defined circumstances by the implied covenant of good faith and fair dealing.[52] *Inter alia*, the implied covenant permits a cause of action against an employer for the deceitful acts of its agent in manufacturing materially false grounds to cause an employee's dismissal.[53] Manufacturing materially false grounds includes the falsification or manipulation of employment records to create fictitious grounds for termination.[54]

---

[49] *Silvious v. Conley*, 775 A.2d 1041, 1042 (Del. 2001) (citing *State Personnel Comm'n v. Howard*, 420 A.2d 135, 138 (Del. 1980)).

[50] *Nicholas v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa*, 74 A.3d 634, 635 (Del. 2013) ("This Court has held that 'no notice of appeal should ever be refused by a clerk for filing if the intention to appeal is clear from the document filed.'" (quoting *Kostyshyn v. State*, 3 A.3d 1097, 2010 WL 3398943, at *1 (Del. Aug. 30, 2010) (TABLE))).

[51] *Pressman*, 679 A.2d at 437

[52] *Id.* at 441.

[53] *Id.* at 437.

[54] *Id.* at 443–44.

11

Because "[d]islike, hatred or ill will, alone, cannot be the basis for a cause of action for termination of an at-will employment,"[55] the core of Lawver's claim of breach of the implied covenant of good faith and fair dealing is her allegation that the personal animus of her supervisors motivated them to manipulate and falsify her employment record in order to manufacture her termination. Lawver does not contend that her history of tardiness, as documented in the Step One and Step Two Reminders, was the reason for her termination,[56] and the Court of Common Pleas correctly determined the incidents of tardiness cannot sustain a claim of breach of the implied covenant of good faith and fair dealing.[57] Regardless of whether Lawver's tardiness should have been used as a basis for disciplinary action, the Complaint lacks an allegation or reasonable inference that Lawver's employment record on tardiness was falsified or manipulated.

In support of her claim of breach of the implied covenant, Lawver argues that—if not expressly alleged in the Complaint—it is reasonable to infer that Lawver's supervisors manipulated or falsified her employment records in order to manufacture Lawver's termination on at least three specific occasions: (1) wrongly naming Lawver as the individual who locked a patient in a lab room; (2) misrepresenting or falsifying the allegations underlying the DML; and (3) falsely

---

[55] *Id.* 445.
[56] Pl.'s Br. at 12.
[57] *Lawver*, 2016 WL 2610653, at *4.

12

attributing fault to Lawver for rooming delays.[58] As to these incidents, Christiana Care argues that the documents attached as exhibits to the Complaint contradict the allegations and reasonable inferences that might be drawn from the body of the Complaint such that Lawver's breach of the implied covenant claim must fail as a matter of law.[59]

With regard to the locked lab room incident, Lawver alleges that Colbourne and White-Murray notified her that she was named in the nurse practitioner's report to risk management as the individual who had locked the lab room door.[60] Because another medical assistant was responsible for locking the lab room, Lawver specifically alleges that she was not, in fact, named in the nurse practitioner's report.[61] Lawver argues it is reasonably inferable that Colbourne and White-Murray wrongfully named Lawver as the individual responsible and that the incident was in her employment record at the time of her termination.[62] On this point, the Court does not agree with Christiana Care's argument that the Court must conclude the incident played no role in Christiana Care's decision to terminate Lawver because the "Disciplinary Action Record" relaying Christiana Care's termination decision to Lawver does not mention the incident.[63] It is

---

[58] Pl.'s Br. at 11–12.
[59] Def.'s Resp. at 12–14.
[60] Compl. ¶ 25.
[61] Id. ¶ 26.
[62] Pl.'s Br. at 11.
[63] Compl. Ex. H, Termination Disciplinary Action Record.

reasonable to infer from the facts pled in the Complaint that the allegation against Lawver was in her employment record. And, critically for Lawver's claims, the locked lab room incident is not the only alleged falsification or manipulation of her employment record that can be inferred from the facts pled in the Complaint.

On the subject of the DML, Christiana Care argues that Lawver "admits to the conduct" underlying the forwarding of the "inappropriate" email and refusal to talk in her supervisor's office.[64] As to the forwarded email, Christiana Care is correct. Lawver admits to forwarding the email but argues the forwarding was not "inappropriate" such that it warranted discipline.[65] However, as to Lawver's alleged refusal to report to her supervisor's office, Christiana Care overstates Lawver's purported admission. Lawver's DML faults Lawver for "refusing to report to your supervisor['s] office after being asked *more than once*."[66] Lawver admits in the Explanation of Complaint to being asked—once—to speak in her supervisor's office, whereupon she did not directly refuse, but offered to speak with her supervisor at her workstation, which she did.[67]

Further, and contrary to Christiana Care's argument,[68] Lawver's "Plan for Improvement" (included in her Disciplinary Action Record), does not directly

---

[64] Def.'s Resp. at 18.

[65] Compl. ¶¶ 31–32.

[66] Compl. Ex. E, DML Disciplinary Action Record (emphasis added).

[67] Compl. Ex. F, DML Appeal Explanation of Complaint.

[68] Def.'s Resp. at 18.

14

contradict the allegations in the Complaint such that Lawver's allegations—which are otherwise assumed to be true at this preliminary stage—must be disregarded. In the Plan for Improvement, Lawver responds to the allegation of disrespectful behavior by stating that she is "committed to improving my performance," can "improve" in the area of courteousness, and plans "to work towards removing obstacles" that prevented her from working effectively with her supervisors.[69] Acknowledging room for improvement is not the equivalent of admitting fault. A reasonable inference drawn from the allegations in the Complaint (as well as the exhibits) is that White-Murray was in a position to falsify or manipulate this anonymous third-party's alleged complaint against Lawver, was motivated to do so by personal animus, and did so in order to manufacture Lawver's termination.

Finally, Lawver alleges that the event precipitating her termination—a delay in rooming patients—was caused by factors outside of her control and not by her failure to follow workflow procedures.[70] The reasonable inference from this allegation is that the true cause of the delay was known to Lawver's superiors, who then falsely attributed fault to Lawver in order to manufacture her termination. This inference is supported by Lawver's allegation that just prior to her termination

---

[69] Compl. Ex. E, DML Disciplinary Action Record.
[70] Compl. ¶¶ 39–40.

15

she was once again treated in an abusive and aggressive manner by Melvin, which Lawver reported to Colbourne as she had in the past.[71]

Christiana Care attempts to reframe the allegations in the Complaint as mere disagreement between Lawver and Christiana Care over whether disciplinary action was warranted. While this interpretation may ultimately prevail, it is not warranted at this preliminary stage. Viewing all the facts alleged in the light most favorable to Lawver, and giving her the benefit of all the reasonable inferences therefrom, the Court finds that Lawver has alleged sufficient facts to survive a motion to dismiss.

## V. CONCLUSION

For the foregoing reasons, upon careful and *de novo* review, the decision of the Court of Common Pleas is **REVERSED**.

**IT IS SO ORDERED.**

Jan R. Jurden, President Judge

---

[71] *Id.* ¶ 38.

16