# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| DEBORAH GRIFFITH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. NO.: N17C-03-011 AML |
| | ) | |
| ENERGY INDEPENDENCE, LLC | ) | |
| JAMES WATSON, and | ) | |
| SOUTHLAND INSULATORS OF | ) | |
| DELAWARE, LLC d/b/a | ) | |
| DELMARVA INSULATION | ) | |
| COMPANY, | ) | |
| | ) | |
| Defendants. | ) | |

Submitted: September 15, 2017
Decided: December 13, 2017

## MEMORANDUM OPINION

**Upon Defendants' Motion to Dismiss, Granted in part**

Robert C. Collins II, Esq. of SCHWARTZ & SCHWARTZ, Dover, Delaware, Raeann Warner, Esq. of JACOBS & CRUMPLAR, P.A., Wilmington, Delaware; *Attorneys for Plaintiff.*

Patrick M. McGrory, Esq., and Jason J. Cummings, Esq. of TIGHE & COTTRELL, P.A., Wilmington, Delaware; *Attorneys for Energy Independence and James Watson.*

**J. LeGROW**

In August 2011, Energy Independence ("Energy") and its agent James Watson (collectively, the "Moving Defendants") supervised the insulation and encapsulation of Deborah Griffith's ("Plaintiff") crawlspace. Energy subcontracted with Southland Insulators ("Southland"), a separate entity and non-moving defendant, to perform the actual work. Southland completed the work without a dehumidifier or any other form of moisture-prevention. Plaintiff alleges moisture in the crawlspace promoted mold growth that caused her to contract lung disease. Plaintiff brought suit for breach of contract, negligence, breach of the implied warranty of good quality and workmanship, and breach of the implied covenant of good faith and fair dealing. Moving Defendants contend all claims, except the breach of contract claim, should be dismissed.

This case presents four questions: (i) whether plaintiff can sue the Moving Defendants in tort when the claim is based on the parties' contract; (ii) whether Energy owed plaintiff an implied warranty of good quality and workmanship when it only supervised the renovation; (iii) whether Energy breached the implied covenant of good faith and fair dealing; and (iv) whether Watson personally may be held liable for his actions as Energy's agent.

I find Energy's alleged negligent performance of the work it undertook permits plaintiff to sue in tort, and that Energy cannot evade its warranty of good quality and workmanship by subcontracting with Southland. The amended

complaint, however, fails to support a claim that Moving Defendants breached the implied covenant of good faith and fair dealing. Finally, the lack of factual allegations suggesting misfeasance or active negligence requires dismissal of Plaintiff's negligence claim against Watson. My reasoning follows.

**FACTUAL AND PROCEDURAL BACKGROUND**

The following facts are drawn from the amended complaint. In August 2011, Watson, through Energy, performed a "Home Performance Assessment" for Deborah Griffith. Watson recommended encapsulation and insulation of the crawlspace to improve the home's energy conservation. After the assessment, Griffith and Energy entered into a contract in which Energy agreed to supervise and oversee the renovations. Energy then contracted with Southland to renovate Plaintiff's crawlspace. Southland completed the renovation in August 2011. At no time did either company recommend or propose installing a dehumidifier or other moisture-reducing device as part of the renovation. In August 2015, Plaintiff learned a dehumidifier is necessary to prevent mold growth in insulated crawlspaces. Plaintiff alleges she acquired mold-related lung disease due to the growth of mold in her crawlspace. In addition to physical injuries, Plaintiff suffered economic loss due to injury-related lost wages.

On July 25, 2017, Plaintiff filed this action. In the original complaint, she asserted claims against all defendants for negligence, as well as claims against

2

Energy and Southland for breach of the implied warranty of good quality and workmanship and breach of the implied covenant of good faith and fair dealing. Moving Defendants then filed a motion to dismiss. After the Court granted Plaintiff's motion to amend, Plaintiff filed an amended complaint that added a breach of contract claim against Energy and Southland. Moving Defendants then filed a second motion to dismiss Plaintiff's claims for negligence, breach of the implied warranty of good quality and workmanship, and breach of the implied covenant of good faith and fair dealing, as well as all claims against Watson.

**THE PARTIES' CONTENTIONS**

Plaintiff claims all Defendants negligently insulated her crawlspace by failing to install a dehumidifier during the renovation. Plaintiff also claims Energy and Southland breached their implied warranty of good quality and workmanship because they failed to perform the renovation in a reasonably workmanlike manner. Finally, Plaintiff alleges Energy and Southland breached the implied covenant of good faith and fair dealing by negligently insulating and encapsulating the crawlspace.[1]

In response, Moving Defendants argue Plaintiff cannot sue for negligence because the claim is based entirely on the parties' contract. Moving Defendants also move to dismiss Plaintiff's claim for breach of the implied warranty of good

---

[1] As noted above, Plaintiff also maintains a breach of contract claim against Energy and Southland, but that claim is not at issue here.

quality and workmanship because they did not perform the renovation of the crawlspace. They argue liability for the implied warranty lies solely with Southland, who performed the actual renovation. Moving Defendants further argue Plaintiff's amended complaint lacks a sufficient factual basis for a claim of breach of the implied covenant of good faith and fair dealing. Lastly, Moving Defendants argue all claims against Watson should be dismissed because he acted only as Energy's agent and cannot be held personally liable.

## ANALYSIS

On a motion to dismiss, the Court must determine whether the "plaintiff may recover under any reasonably conceivable set of circumstances susceptible of proof."[2] "If [the plaintiff] may recover, the motion must be denied."[3] A court may grant the motion if "it appears to a reasonable certainty that under no state of facts which could be proved to support the claim asserted would plaintiff be entitled to relief."[4] When applying this standard, the Court will accept as true all non-

---

[2] *Holmes v. D'Elia*, 129 A.3d 881 (Del. 2015) (citing *Spence v. Funk*, 396 A.2d 967, 968 (Del. 1978)).

[3] *Deuley v. DynCorp Int'l, Inc.*, 2010 WL 704895, at *3 (Del. Super. Feb. 26, 2010) (citing *Parlin v. DynCorp Int'l, Inc.*, 2009 WL 3636756, at *1 (Del. Super. Sept. 30, 2009) (quoting *Spence*, 396 A.2d at 968)), *aff'd*, 8 A.3d 1156 (Del. 2010).

[4] *Fish Eng'g Corp. v. Hutchinson*, 162 A.2d 722, 724 (Del. 1960) (citing *Danby v. Osteopathic Hosp. Ass'n of Del.*, 101 A.2d 308, 315 (Del. Ch. 1953), *aff'd*, 104 A.2d 903 (Del. 1954)); *Nero v. Littleton*, 1998 WL 229526, at *3 (Del. Ch. Apr. 30, 1998).

4

conclusory, well-pleaded allegations.[5] In addition, "a trial court must draw all reasonable factual inferences in favor of the party opposing the motion."[6]

### A. The parties' contract does not preclude Plaintiff's negligence claim because the amended complaint alleges negligent performance of contract.

Moving Defendants argue Plaintiff's negligence claim should be dismissed because Plaintiff cannot sue in tort when the claim is based entirely on breach of contract.[7] This argument is inconsistent with this Court's application of the *Restatement (Second) of Torts*, which allows contracting parties to sue for negligent performance of contractual obligations.

Section 323 of the *Restatement (Second) of Torts* provides:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if (a) his failure to exercise such care increases the risk of such harm, or (b) the harm is suffered because of the other's reliance upon the undertaking.[8]

---

[5] *Pfeffer v. Redstone*, 965 A.2d 676, 683 (Del. 2009).
[6] *Doe v. Cahill*, 884 A.2d 451, 458 (Del. 2005) (citing *Ramunno v. Cawley*, 705 A.2d 1029, 1034 (Del. 1998) (citing *Solomon v. Pathe Commc'ns Corp.*, 672 A.2d 35, 38 (Del. 1996)) (other citations omitted)).
[7] *See* Def.s' Mot. Dismiss 2 (citing *Data Mgmt. Internationale, Inc. v. Saraga*, 2007 WL 2142848, *3 (Del. Super. July 25, 2007)).
[8] RESTATEMENT (SECOND) OF TORTS § 323 (AM. LAW INST. 1965).

In *Haynie v. Sheldon*,[9] this Court applied Section 323 to find the defendant water supply company was negligent when it failed to provide adequate water supply and water pressure to permit the plaintiff to extinguish the fire. The Court held that "[h]aving undertaken this contractual duty, the risk of harm resulting from failure to use reasonable care to supply adequate water to fight fires is obvious."[10] In other words, the Court held a party to a contract may bring a negligence claim when the other party fails to use reasonable care when performing its contractual duty.[11]

Additionally, in the Home Owner's Protection Act (the "Act"), the General Assembly "specifically provided for tort actions seeking to recover damages resulting from negligent [improvement] of residential property to go forward."[12] The Act states:

> No action based in tort to recover damages resulting from negligence in the construction or manner of construction of an improvement to residential real property and/or in the designing, planning, supervision and/or observation of any such construction or manner of construction shall be barred solely on the ground that the only losses suffered are economic in nature.[13]

[9] 1985 WL 549259 (Del. Super. Jan. 21, 1985).
[10] *Id.* at *3.
[11] Delaware courts generally follow the Restatement. *See, e.g. Riedel v. ICI Ams., Inc.*, 968 A.2d 17, 20 (Del. 2009); *Furek v. Univ. of Delaware*, 594 A.2d 506, 520 (Del. 1991); *Stokes v. Ruppert Landscape, Inc.*, 2012 WL 4168041, at *1 (Del. Super. Aug. 24, 2012).
[12] *Bromwich v. Hanby*, 2010 WL 8250796, *3 (Del. Super. July 1, 2010).
[13] 6 *Del. C.* § 3652. The Act eliminated the economic loss doctrine in residential home improvement cases and furthered the legislative intent to allow negligence actions in such cases even when the only loss is economic. *Casale Constr., LLC v. Best Stucco LLC*, 2014 WL

The Act permits negligence claims in cases where the plaintiff was a party to a contract, even when a prospective plaintiff did not suffer any bodily injury.[14]

Here, Plaintiff alleges Moving Defendants' renovation fell below the standard of reasonable care because no dehumidifier was recommended or installed. Section 323 of the Restatement and the Act allow claims for negligent performance of a contract in this factual context. Moving Defendants' motion to dismiss Plaintiff's negligence claim against Energy therefore is denied.

### B. Energy cannot evade Plaintiff's breach of implied warranty of good quality and workmanship claim by subcontracting with Southland.

Moving Defendants argue Plaintiff's claim for breach of implied warranty of good quality and workmanship should be dismissed as to Moving Defendants because the amended complaint does not allege Energy performed the work at issue. Moving Defendants contend the warranty applies only to Southland, who performed the actual renovation.

Under Delaware law, "[w]here a person holds himself out as a competent contractor to perform labor of a certain kind, the law presumes that he possesses

---

1316150, *2 (Del. Super. Mar. 28, 2014). Although the Home Improvement Act does not directly apply to this case, because Plaintiff allegedly suffered bodily injury, it would be absurd to conclude the General Assembly intended to permit negligence claims in home improvement cases involving only economic damages, but did not intend to permit such claims where a plaintiff suffers both economic and personal injury. If, under the Act, a plaintiff may sue for negligence even where there only are economic damages and even where there is privity of contract between plaintiff and defendant, it necessarily follows that a plaintiff with both personal and economic injury may pursue both tort and contract claims.

[14] *See, e.g., Marcucilli v. Boardwalk Builders, Inc.*, 1999 WL 1568612 (Del. Super. Dec. 22, 1999); *Healy v. Silverhill Const., Inc.*, 2009 WL 295391 (Del. Com. Pl. Feb. 5, 2009) (finding defendant contractors liable in tort for mold-related damage to plaintiff's home).

7

the requisite skill to perform such labor in a proper manner, and implies as a part of his contract that the work shall be done in a skillful and workmanlike manner."[15] The Delaware Supreme Court has held this warranty applies to a general contractor even when the actual work is performed by a subcontractor.[16]

Here, Plaintiff's amended complaint alleges all Defendants contracted to perform the construction work. Southland's contract with Plaintiff lists Energy Independence under "Client #" and the Griffith Residence under "Job #."[17] Although Moving Defendants dispute who hired Southland, it is reasonable to infer that Southland performed the construction as Energy's subcontractor and the Court must draw that inference for purposes of the pending motion. Accordingly, the motion to dismiss Plaintiff's claim for breach of the warranty of good quality and workmanship is denied.

### C. Moving Defendants' motion to dismiss Plaintiff's implied covenant of good faith and fair dealing claim is granted because nothing in the record shows the parties intended to include a dehumidifier.

Moving Defendants argue Plaintiff failed to allege a sufficient factual basis for her implied covenant claim. The amended complaint states Plaintiff would have negotiated the installation of a dehumidifier "had they thought to negotiate

---

[15] *Bye v. George W. McCaulley & Son Co.*, 76 A. 621, 622 (Del. Super. 1908).
[16] *Council of Unit Owners of Breakwater House Condominium v. Simpler*, 603 A.2d 792, 796 (Del. 1992) ("A developer who, under the circumstances of a particular case, would otherwise be subject to an implied warranty of good quality and workmanship cannot escape that warranty merely by arranging for the actual construction to be performed by his contractual agent.").
[17] Ex. B to Am. Compl.

with respect to that matter[,]"[18] but this, Moving Defendants argue, is insufficient to support a breach of the implied covenant of good faith and fair dealing claim.[19]

To sufficiently plead "a breach of an implied covenant of good faith and fair dealing, the plaintiff must allege a specific implied contractual obligation, a breach of that obligation by the defendant, and resulting damage to the plaintiff."[20] In *Aspen Advisors LLC v. United Artists Theatre Co.*,[21] the Court of Chancery affirmed that an implied covenant is breached "only when the defendant engage[s] in arbitrary or unreasonable conduct which has the effect of preventing the other party from receiving the fruits of the contract."[22] In *Aspen Advisors*, plaintiffs held warrants to buy common stock in United Artists ("UA"). Before the lawsuit, several UA shareholders participated in an exchange agreement unrelated to the warrants. The warrant holders claimed UA violated the implied covenant of good faith and fair dealing because UA did not permit them to participate in the exchange agreement. The Court of Chancery found the warrants' plain terms gave the warrant holders no right to participate in the exchange agreement and that the warrant holders' rights were not affected by the exchange agreement. To insert such a right, the Court of Chancery found, would give plaintiffs "contractual

---

[18] Am. Compl. ¶ 37.
[19] Df.s' Partial Mot. Dismiss 4.
[20] *Southern Track & Pump, Inc. v. Terex Corp.*, 623 F.Supp.2d 558, 562 (Del. D. 2009) (quoting *Fitzgerald v. Cantor*, 1998 WL 842316, at *1 (Del. Ch. Nov. 10, 1998)).
[21] *Aspen Advisors LLC v. United Artists Theatre Co.*, 843 A.2d 697 (Del. Ch. 2004).
[22] *Id.* at 701.

9

protections that they failed to secure for themselves at the bargaining table."[23] The Court of Chancery therefore dismissed the plaintiffs' claim for breach of the implied covenant of good faith and fair dealing.

Here, Plaintiff's claim suffers the same insufficiencies as the claim dismissed in *Aspen Advisors*. First, nothing in the amended complaint or the contract suggests the parties intended to install a dehumidifier. Rather, the amended complaint alleges "[a]t no time did the Defendants suggest, recommend, propose, or install a dehumidifier or any other method to reduce moisture in the crawl space."[24] It is not enough to allege plaintiff would have included the dehumidifier "had they thought of it."[25] As in *Aspen Advisors*, this Court cannot use the implied covenant to insert contractual protections that Plaintiff failed to secure for herself at the bargaining table.

Additionally, nothing in the amended complaint alleges the kind of arbitrary or unreasonable conduct the implied covenant is intended to prevent. The amended complaint alleges the Defendants were negligent, but not that they attempted to deceive Plaintiff. Because nothing in the record permits an inference that the parties intended to include a dehumidifier, or that the Moving Defendants

---

[23] *Id.*
[24] Am. Compl. ¶ 14.
[25] *Id.* at ¶ 37.

10

acted arbitrarily, the motion to dismiss Plaintiff's breach of the implied covenant of good faith and fair dealing claim is granted.

### D. Moving Defendant's motion to dismiss all claims against Watson is granted because the amended complaint alleges no misfeasance or active negligence.

Moving Defendants argue Plaintiff's negligence claim against Watson should be dismissed because the claim is based entirely on Energy's alleged breach. Moving Defendants argue Watson acted only as Energy's agent during the renovation and therefore cannot personally be held liable. In response, Plaintiff argues that "[c]orporate officers acting within the scope of their employment can be held liable for their own negligence."[26]

In *Gassis v. Corkery*,[27] the case on which Plaintiff relies, the Court of Chancery held that, under agency principles, "acts taken by [a] corporate principal are not automatically imputed to its agents."[28] "[A] corporate officer may be liable in tort only when she is actively involved in the commission of the tort in that she directed, ordered, ratified, approved, or consented to the tort."[29] Importantly, the *Gassis* Court held an officer only may be "held liable for misfeasance or active negligence and not for nonfeasance or the omission of an act."[30]

---

[26] Pl.'s Resp. Def.s' Mot. Dismiss 5 (citing *Gassis v. Corkery*, 2014 WL 3565418 (Del. Ch. July 21, 2014)).

[27] *Gassis v. Corkery*, 2014 WL 3565418, *5 (Del. Ch. July 21, 2014).

[28] *Id.*

[29] *Id.*

[30] *Id.*

11

In *Gassis*, Bishop Macram Gassis accused officers of the Sudan Relief Fund of misappropriating his likeness for fundraising after they removed Gassis as the Fund's chairman.[31] The Court of Chancery found the complaint failed to allege the Fund's officers took affirmative steps on behalf of the Fund to use plaintiff's name, and alleged only that they failed to prevent the use of his name for a short period of time.[32] Because the complaint did not allege the officers directed or ordered the use of plaintiff's name, the Court of Chancery held the defendants could not personally be held liable.[33]

Here, Plaintiff argues Watson's draft scope of work and recommended renovations fell below the reasonable standard of care and caused Plaintiff harm. Although the amended complaint does allege Watson directed the renovation that eventually led to the mold growth, Watson's actions as alleged in the amended complaint at most would amount to an omission. Watson's alleged omission is similar to the *Gassis* defendants' failure to prevent the use of Bishop Gassis's name after he left the Fund. In both cases, personal liability arguably would attach if the individuals actively directed the destructive *outcome*. Because the amended complaint, however, fails to allege misfeasance or active negligence, Watson cannot personally be held liable and all claims against him therefore are dismissed.

---

[31] *Id.* at *1.
[32] *Id.* at *6.
[33] *Id.*

**E. Count III and the negligence claim against Watson are dismissed without leave to amend.**

In her opposition to Moving Defendants' motion to dismiss, Plaintiff requests, in the event the Court determines any claims inadequately were plead, that she be given leave to further amend the complaint. Here, however, Plaintiff already was given leave to amend after full briefing and argument on the motion to dismiss.[34] That amended complaint failed to remedy the pleading insufficiencies for breach of the implied covenant of good faith and fair dealing and added no allegations that would bolster a claim against Watson. Granting Plaintiff leave to further amend the complaint would be an inefficient use of the parties' and the Court's resources, especially because the majority of Plaintiff's claims survived the Motion. Count III and the negligence claim against Watson therefore are dismissed with prejudice.

**CONCLUSION**

For the foregoing reasons, Energy's Motion to Dismiss is **GRANTED** as to Count III and is **DENIED** as to Counts I and II. Watson's Motion to Dismiss is **GRANTED**.

---

[34] D.I. 20.

13