# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| JEFF LIPMAN and CAROL LIPMAN, derivatively on behalf of GPB HOLDINGS II, LP and GPB AUTOMOTIVE PORTFOLIO, LP | ) ) ) ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | C.A. No. 2020-0054-SG |
| | ) | |
| GPB CAPITAL HOLDINGS LLC, a Delaware limited liability company, DAVID GENTILE, JEFFREY LASH, and JEFFRY SCHNEIDER, | ) ) ) ) | |
| | ) | |
| Defendants, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| GPB HOLDINGS II, LP, a Delaware limited partnership, and GPB AUTOMOTIVE PORTFOLIO, LP, a Delaware limited partnership, | ) ) ) ) | |
| | ) | |
| Nominal Defendants. | ) | |

## <u>MEMORANDUM OPINION</u>

Date Submitted:  October 26, 2020
Date Decided:  November 18, 2020

Marcus E. Montejo and Stephen D. Dargitz, of PRICKETT, JONES & ELLIOTT, P.A., Wilmington, Delaware; OF COUNSEL: Chet B. Waldman and Adam J. Blander of WOLF POPPER LLP, New York, New York, *Attorneys for Plaintiffs Jeff Lipman and Carol Lipman*.

Patricia L. Enerio and Elizabeth A. DeFelice, of HEYMAN ENERIO GATTUSO & HIRZEL LLP, Wilmington, Delaware; OF COUNSEL: Tab K. Rosenfeld, Steven M. Kaplan, and Nicole E. Meyer, of ROSENFELD & KAPLAN, LLP, New York, New

York, *Attorneys for Defendant GPB Capital Holdings LLC and Nominal Defendants GPB Holdings II, LP and GPB Automotive Portfolio, LP*.

Jacob R. Kirkham, of KOBRE & KIM LLP, Wilmington, Delaware; OF COUNSEL: William McGovern and Leif T. Simonson, of KOBRE & KIM LLP, New York, New York, *Attorneys for Defendant David Gentile*.

Michael W. McDermott and Richard I. G. Jones Jr., of BERGER HARRIS LLP, Wilmington, Delaware; OF COUNSEL: Jeffrey Schreiber and Richard J. Jancasz, of MEISTER SEELIG & FEIN LLP, New York, New York, *Attorneys for Defendant Jeffry Schneider*.

David A. Felice, of BAILEY & GLASSER, LLP, Wilmington, Delaware; OF COUNSEL: Kevin D. Galbraith, of LAW OFFICE OF KEVIN GALBRAITH, LLC, New York, New York, *Attorneys for Defendant Jeffrey Lash*.

GLASSCOCK, Vice Chancellor

This matter involves allegations that the controller of a general partner and his associates looted the general partner's constituent partnerships. The Plaintiffs are limited partners; they seek to proceed derivatively on behalf of the partnerships. The individual Defendants are the alleged controller, David Gentile, and two alleged associates of Gentile, Jeffrey Lash and Jeffry Schneider. The Defendant General Partner is a Delaware LLC, GPB Capital Holdings ("GPB"). The Defendants have moved to dismiss; this Memorandum Opinion addresses those motions.

The primary contention of the individual Defendants is that only GPB owes fiduciary duties to the limited partnerships. Accordingly, Gentile cannot have breached such duties, and Lash and Schneider cannot have aided and abetted any breach, the allegations of which form the gravamen of the Complaint. I find, however, that the allegations of the Complaint, together with the reasonable inferences therefrom, are sufficient to sustain a claim that Gentile used his control over GPB to cause it to breach duties to the partnerships, that he used his control to usurp partnership assets, that this exercise of control imposed fiduciary duties on Gentile in way of the partnerships, which he breached, and that Lash and Schneider aided and abetted such breaches.

To proceed derivatively on behalf of a partnership, a limited partner must first have made a demand that the general partner undertake the litigation, or demonstrate via the pleadings that such demand should be excused as futile. Here, the Plaintiffs

made no demand against GPB, and the Defendants contend that demand is not excused. I find that the allegations of the Complaint, which incorporate in the pleadings several independent legal actions involving the Partnerships, make the threat of liability to the general partner, and its controller, such that it is reasonably conceivable that the general partner could not bring its business judgment to bear on any demand involving these allegations. Accordingly, demand is excused and the Plaintiffs may proceed derivatively.

My reasoning follows a recitation of the factual background, below.

## I. BACKGROUND[1]

*A. The Parties*

Nominal Defendant GPB Holdings II ("Holdings II") is a Delaware limited partnership.[2] It was formed in 2015 to acquire and operate automotive retail, healthcare, and information technology companies.[3]

Nominal Defendant GPB Automotive Portfolio, LP ("Auto," and together with "Holdings II," the "Partnerships) is a Delaware limited partnership.[4] Auto was formed in 2013 to acquire and operate automotive dealerships.[5]

---

[1] The facts, except where otherwise noted, are drawn from the Verified Derivative Complaint ("Compl."), Dkt. No. 1, and exhibits or documents incorporated therein, and are presumed true for the purposes of these Motions to Dismiss.
[2] Compl. ¶ 7.
[3] Compl. ¶ 7.
[4] Compl. ¶ 8.
[5] Compl. ¶ 8.

Plaintiffs Jeff Lipman and Carol Lipman are limited partners of both Holdings II and Auto and were limited partners at the time of the wrongs alleged in the Complaint.[6] They invested $550,000 in Holdings II and $200,000 in Auto.[7]

Defendant GPB Capital Holdings, LLC is a Delaware limited liability company that holds itself out to be a "New York-based alternative asset management firm that seeks to acquire income-producing private companies."[8] It operates as a holding company and manages several investment funds in different industries.[9] GPB was the general partner of both Holdings II and Auto at the time of all alleged breaches of fiduciary duty.[10] Both Auto and Holdings II share an office with GPB.[11]

Defendant David Gentile is the founder, sole member, and Chief Executive Officer of GPB.[12] In that capacity, Gentile is actively involved in the day-to-day operations of the Partnerships and in marketing to the Partnerships' limited partners.[13]

---

[6] Compl. ¶ 6.
[7] Compl. ¶ 6.
[8] GPB Capital Alternative Asset Management, https://gpb-cap.com/ (last visited November 18, 2020).
[9] Compl. ¶ 11.
[10] Compl. ¶ 9.
[11] Compl. ¶¶ 7–9.
[12] Compl. ¶ 12.
[13] Compl. ¶ 12; Stephen D. Dargitz's Ltr. Enclosing Massachusetts Enforcement Action Compl., Ex. A ("Mass. Enforcement Compl.") at 2, Dkt. No. 60.

Defendant Jeffrey Lash is one of GPB's former automotive retail directors and managed many of the retail dealerships in which GPB had majority control.[14]

Defendant Jeffry Schneider is the founder of Ascendant Alternative Strategies, LLC ("Ascendant Alternative"). Ascendant Alternative is an investment firm that was the exclusive dealer manager of GPB's funds.[15] Ascendant Alternative has received a subpoena from the Securities and Exchange Commission (the "SEC") in connection with the SEC's investigation of GPB.[16] An administrative complaint filed by the Enforcement Section of the Massachusetts Securities Division of the Office of the Secretary of the Commonwealth ("Massachusetts Enforcement Complaint") alleges that Ascendant Alternative is owned and controlled by "persons includ[ing] Gentile and Schneider."[17]

*B. Factual Overview*

In 2013, Gentile created GPB to acquire "middle market, income-producing companies, regardless of a specific fund's strategy."[18] To obtain financing for these acquisitions, "Gentile offered high sales commissions to financial professionals to sell his funds"[19] and told investors that they would receive monthly distributions

---

[14] Compl. ¶ 13.
[15] Compl. ¶ 14.
[16] Compl. ¶ 14.
[17] Mass. Enforcement Compl. 3–4.
[18] Mass. Enforcement Compl. 2–3.
[19] Mass. Enforcement Compl. 3.

providing an 8% annual rate of return.[20]  GPB also hired a broker-dealer branch office called Ascendant Capital, LLC ("Ascendant Capital") to facilitate the marketing and sale of its funds.[21]  Ascendant Capital is wholly-owned by Schneider.[22]  In 2017, Ascendant Capital became a branch office of Ascendant Alternative, and Gentile engaged Schneider, Ascendant Capital's founder and sole owner, to draft key documents and attend internal GPB executive meetings.  Gentile also gave Schneider the exclusive right to sell GPB funds.[23]

### 1. The DiBre Allegations

In July, 2017, GPB sued one of its former automotive retail directors, Patrick DiBre, alleging that he had failed to complete auto dealership sales valued at $40 million.[24]  In a counterclaim filed in March, 2018 (the "DiBre Counterclaim"), DiBre alleged that "senior GPB executives had engaged in a pattern of self-dealing, effectively diverting Partnership assets to themselves without disclosing their self-interested transactions."[25]  The Plaintiffs incorporated the counterclaim by reference to its detailed allegations:

> DiBre alleged that:  (i) Gentile and Schneider indirectly purchased property on which a dealership [was] located and charged the dealership rent; (ii) Gentile and Schneider received undisclosed stipends from dealerships acquired by GPB; (iii) Gentile and Schneider

---

[20] Compl. ¶ 15.
[21] Mass. Enforcement Compl. 3.
[22] Mass. Enforcement Compl. 3.
[23] Mass. Enforcement Compl. 3.
[24] Compl. ¶ 17.
[25] Compl. ¶ 17.

6

created an entity, LSG, to which they directed more than $4 million from reinsurance funds and manufacturer rebates that should have gone to dealerships and ultimately to the Partnerships; (iv) Gentile engaged his father's accounting firm to perform approximately $100,000 worth of services each month, and those services either were not performed or were overbilled; (v) Gentile and Schneider expensed various luxury items for their own personal use; and (vi) Gentile and Schneider overstated the purchase price for dealerships and then redirected the overage to themselves in the form of 'acquisition fees.'[26]

### 2. The Rosenberg Allegations

Plaintiffs also incorporated by reference allegations made in a complaint filed by David Rosenberg (the "Rosenberg Complaint"), the CEO of Prime Automotive Group, which is "a network of automotive dealerships" that is "one of the Defendants' largest investments."[27] The Rosenberg Complaint was a result of GPB's failure to pay $5.9 million that was allegedly owed under a March 1, 2019 Amended and Restated Repurchase Agreement.[28] According to the Rosenberg Complaint, GPB refused to pay Rosenberg and sought to replace him as CEO of Prime Automotive in retaliation for his reporting of GPB's alleged financial misconduct to the Partnerships' auditor, EisnerAmper LLP ("EisnerAmper").[29] That financial misconduct included Gentile and Lash engaging in fictitious transactions

---

[26] Compl. ¶ 17.

[27] Ltr. to the Court from Stephen D. Dargitz, Exhibit, Rosenberg Compl. ¶ 4, Dkt. No. 66.

[28] Compl. ¶ 18.

[29] Compl. ¶ 18; Transmittal Decl. of Elizabeth A. DeFelice ("DeFelice Decl."), Ex. F, at 2, Dkt. No. 28.

and other improper procedures to enrich themselves and inflate the Partnerships' financial results.[30] Specifically:

> Gentile and Lash . . . funneled nearly $2,000,000 in revenue to entities they controlled, including some under the guise of "management fees." For the year 2015, $201,7076 [*sic*] was transferred to Emdykycol, Inc., and $201,706 was transferred to Jachirijo, Inc., an entity owned by Gentile. Upon information and belief, Emdykycol, Inc. is owned by [both] Lash and . . . Gentile. Dealership funds have also been siphoned off to LSG Auto Wholesale, an entity named for <u>L</u>ash, <u>S</u>chneider (a close associate of Gentile), and <u>G</u>entile. Upon information and belief, the payments described above served no legitimate purpose nor were they disclosed to investors. . . .

> [U]pon information and belief . . . (i) Lash improperly drew an advance of $750,000 that he labelled a "retention bonus," which he then distributed to himself and others; (ii) Lash and others inexplicably received approximately $100,000 worth of sporting vehicles and equipment after the close of a dealership purchase, suggesting a kickback arrangement; and (iii) Lash and others orchestrated kickback payments to themselves of $100 per vehicle for every Canadian used car purchase.[31]

### 3. Problems with the Partnerships' Financial Statements

This alleged financial misconduct caused GPB to be unable to pay the promised monthly distributions amounting to an 8% annual rate of return.[32] To retain the veneer of being able to pay these distributions, GPB used individual capital accounts of limited partners to fund distributions—essentially returning the limited partners' own capital to them under the guise of "distributions." Such a scheme is,

---

[30] Compl. ¶ 19.
[31] Compl. ¶¶ 20–21.
[32] Compl. ¶ 22.

of course, not sustainable, and in December, 2017, GPB reported, in a letter to the Partnerships' limited partners, that the Partnerships had failed to meet performance expectations in 2018 and would likely have an intangible asset impairment charge.[33] In that letter, GPB also indicated that it intended to divest certain underperforming assets and it would provide more detail in forthcoming audited financial statements.[34]

Those details never arrived. As of the date of the filing of the Complaint, GPB has not filed its audited financial statements for the Partnerships for the years 2017 or 2018.[35] And although GPB announced in the summer of 2018 that its 2015 and 2016 financial statements would need to be restated, those restatements have also not been released.[36] GPB also did not disclose the reason for the restatement.[37]

On July 27, 2018, Auto's auditor, Crowe LLP ("Crowe"), attempted to resign, stating in a resignation letter that it:

> concluded the scope of [its] audits would be expanded significantly based on information that [it had] obtained through July 26, 2018, related to the ongoing investigation of certain claims against the Company and certain officers, as well as significant related party activity. Even with the expanded audit procedures, which [it has] not completed, [it did] not believe [it would] be able to obtain sufficient reliable evidence to support issuing an unqualified opinion.

---

[33] Compl. ¶ 24.
[34] Compl. ¶¶ 24–25.
[35] Compl. ¶¶ 32, 42.
[36] Compl. ¶¶ 26, 32, 42.
[37] Compl. ¶ 27.

In light of the item above and work performed to date, [Crowe] believe[d] internal controls [were] not sufficient to develop reliable financial statements.

Based on various changes within management during the audit period and information obtained through July 26, 2018, [it did] not believe [it was] in a position to rely on management's representations related to the audits identified below [regarding Auto and GPB Prime Holdings, LLC].

As previously communicated to [GPB], information came to [Crowe's] attention that caused [it] to believe that the previously issued GPB Automotive Portfolio, LP 2015 financial statements, which were audited by other auditors, were materially misstated. [Crowe] understand[s] that at this time management has concluded those financial statements require restatement; however, management has not come to their conclusion on the impact of the restatement on subsequent period financial statements.[38]

Further, Crowe wrote a second resignation letter also dated to July 27, 2018, which stated that it was resigning as auditor for GPB itself, as well as other funds owned by GPB, because of material misstatements in the 2016 financial statements for those entities.[39] Crowe mentioned in that letter that its audit reports on those statements should no longer be relied upon.[40]

In response to Crowe's attempted resignation, Gentile and other GPB officers met with Crowe to convince it to stay on while management attempted to address the material deficiencies identified in the resignation letters.[41] GPB's officers

---

[38] Compl. ¶ 27.
[39] Compl. ¶ 28.
[40] Compl. ¶ 28. Neither letter, I note, was attached to the Complaint nor provided by Defendants in their Motions to Dismiss briefing.
[41] Compl. ¶ 29.

represented to Crowe that StoneTurn Group LLC ("StoneTurn") was investigating and expressed confidence that StoneTurn would soon be able to address the deficiencies so that Crowe could continue its audits.[42]  Thereafter, on August 2, 2018, Crowe sent two letters to GPB rescinding its July 27th resignation letters but stating that it would cease working until more information was produced so that it could make a final resignation decision.[43]  Crowe also clarified that it had not changed its overall conclusion that the 2015 and 2016 financial statements for several of GPB's funds would need to be restated.[44]

On September 26, 2018, Crowe sent GPB a follow-up letter confirming its decision to resign as auditor for Auto.[45]  GPB did not disclose this information until six weeks later, on November 9, 2018.[46]  GPB's disclosure, moreover, only mentioned that Crowe's resignation was due to perceived risks that Crowe determined fell outside its internal risk tolerance parameters.[47]  It did not mention Crowe's issues with GPB's materially misstated financials, its inability to trust managements' representations, or the lack of internal controls mentioned in Crowe's resignation letter.[48]

---

[42] Compl. ¶ 29.
[43] Compl. ¶ 30.
[44] Compl. ¶ 30.
[45] Compl. ¶ 31.
[46] Compl. ¶¶ 31, 34.
[47] Compl. ¶ 34.
[48] Compl. ¶ 34.

Also in November of 2018, GPB announced that it was temporarily suspending redemptions by limited partners and not accepting new capital from investors, pending its attempt to resolve accounting and financial reporting issues at the Partnerships.[49] By this point, investors were expecting restated 2015 and 2016 financials as well as audited 2017 financial statements that had not yet been provided. However, in March, 2019, GPB informed limited partners of the Partnerships that it would not be providing Schedule K-1 documents before the April 15, 2019 tax filing deadline.[50] And when April arrived, GPB disclosed that the audits of the Partnerships were being delayed due to internal deficiencies.[51] GPB again provided a deadline for the financial statements: June 30, 2019 for the June, 2017 audits and September 30, 2019 for the June, 2018 audits.[52]

The June 30th deadline was, again, not met.[53] GPB informed limited partners, in June, 2019, that the audits for 2016, 2017, and 2018 would all be released on September 30, 2019.[54] And, in September, 2019, GPB again delayed the deadline, stating that as a result of SEC and FBI investigations, it expected that audits would be completed by the end of 2019.[55] In November of 2019, GPB's entire Audit

---

[49] Compl. ¶ 33.
[50] Compl. ¶ 37.
[51] Compl. ¶ 38.
[52] Compl. ¶ 38.
[53] Compl. ¶ 39.
[54] Compl. ¶ 39.
[55] Compl. ¶ 41.

Committee resigned and GPB's new auditor suspended its pending work indefinitely.[56]  As a result, as of the filing of the Complaint, GPB has still not released audited financial statements for the years 2015 through 2018.[57]

### 4. The Related SEC and FBI Investigations

In October, 2019, a federal indictment was unsealed—that indictment charged GPB's Managing Director and Chief Compliance Officer, Michael Cohn, with obstruction of justice relating to an SEC investigation of GPB.[58]  According to the indictment, Cohn worked for the SEC's Enforcement Division from September, 2018, until October, 2018.[59]  While there, he retrieved information concerning an investigation of GPB.[60]  At the same time, he interviewed with GPB and related that he had inside information about the SEC's investigation.[61]  GPB hired Cohn for an executive position and paid him $400,000 a year—a position he began in October of 2018, right after leaving the SEC.[62]  After the indictment was unsealed, GPB scrubbed all mentions of Cohn from its website.[63]

---

[56] Compl. ¶¶ 42, 45.
[57] Compl. ¶ 42.
[58] Compl. ¶ 43.
[59] Compl. ¶ 43.
[60] Compl. ¶ 43.
[61] Compl. ¶ 43.
[62] Compl. ¶ 43.
[63] Compl. ¶ 43.

### 5. The Partnerships' Current Situation

The Partnerships are now under several investigative proceedings and are the subject of arbitrations and litigation relating to the problems detailed above.[64] For example, the SEC is still investigating the possibility of securities fraud in connection with the marketing of the Partnerships.[65] The Financial Industry Regulatory Authority ("FINRA") is also investigating the Partnerships, and investors have filed arbitrations with FINRA against broker-dealers who sold them units in the Partnerships.[66] And the Commonwealth of Massachusetts is also investigating broker-dealers that helped GPB market the Partnerships.[67]

In addition, the involvement of GPB and its executives in other investigations and litigation tends to rope the Partnerships into the chaos. For example, in the summer of 2018, the U.S. Attorney for the Eastern District of New York subpoenaed GPB as part of a joint investigation of the FBI and the New York City Business Integrity Commission (the "BIC") targeting GPB's waste management fund. On February 28, 2019, both the FBI and the BIC raided GPB's Manhattan office—an office it shares with the Partnerships.

---

[64] Compl. ¶ 46.
[65] Compl. ¶ 47.
[66] Compl. ¶ 48.
[67] Compl. ¶ 49.

The uncertainty caused Fidelity Investment's National Financial Services to announce that it would need to remove GPB's private placements—such as the Partnerships—from its platform within 90 days if it could not determine their true value.[68] GPB, in response, admitted that the value of its portfolio had declined from approximately $1.8 billion to approximately $1.1 billion.[69] In particular, GPB reported on December 31, 2018, that Holdings II had lost 25.4% of its fair market value and Auto had lost 39% of its fair market value.[70]

*C. Procedural History*

The Plaintiffs made a demand on GPB for an inspection of the Partnerships' books and records relating to, among other things, the failure to provide audited financial statements on August 30, 2019.[71] On January 28, 2020, the Plaintiffs filed a derivative Complaint, seeking declaratory relief that GPB, Gentile, Lash, and Schneider had either breached fiduciary duties to the Partnerships and/or aided and abetted breaches of fiduciary duty and monetary damages.[72] On April 8, 2020, Schneider, GPB, Holdings II, Auto, and Gentile filed their Motions to Stay or Dismiss.[73] Lash joined the other Defendants' Motions to Stay or Dismiss on May

---

[68] Compl. ¶ 57.
[69] Compl. ¶ 57.
[70] Compl. ¶ 58.
[71] Compl. ¶ 40.
[72] Compl., Relief Requested, ¶¶ a–b, e.
[73] Def. Jeffry Schneider's Mot. To Stay or Dismiss, Dkt. No. 26; Defs. GPB Capital Holdings LLC and Nominal Defs. GPB Holdings II, LP and GPB Automotive Portfolio, LP Mot. To Dismiss or Stay, Dkt. No. 28; Def. David Gentile's Mot. To Stay or Dismiss, Dkt. No. 29.

11, 2020.[74] I heard oral argument on the Motions on July 7, 2020, and denied the Defendants' Motions to Stay from the bench.[75] What remains are their Motions to Dismiss, which I now largely deny.

## II. ANALYSIS

The Defendants collectively make four arguments that apply to all the Defendants in favor of their Motions to Dismiss, and which I will address before turning to the defendant-specific arguments. First, the Defendants argue that demand is not excused because GPB's potential liability is insufficient to render it unable to exercise its business judgment. Second, the Defendants contend that the Plaintiffs' *own* allegations, *i.e.*, allegations not sourced from other pleadings, constitute only a failure to provide financial statements, which is a breach of the Limited Partnership Agreements, but not a breach of fiduciary duties. This argument relies on the assumption that incorporation of factual allegations from other pleadings has either less force than a factual allegation raised by the Plaintiffs from their own knowledge or no force at all—a contention that has implications for both the demand futility issue and the breach of fiduciary duty issue and which I discuss in Section II.B. *infra*. Third, the Defendants point to the Limited Partnership Agreements of the Partnerships, which contain a limitation of liability provision, and

---

[74] Def. Jeffrey Lash's Joinder in Briefs in Support of Mot. To Dismiss or Stay, Dkt. No. 35.
[75] Tr. of July 7, 2020, Oral Arg. Via Zoom on Defs.' Mots. To Dismiss or Stay and Rulings of the Court on Defs.' Mots. To Stay, at 25, Dkt. No. 64.

argue that it means that fiduciaries may only be held liable for bad faith. That provision provides that

> [t]he General Partner and its Affiliates shall not be liable to the Partnership or any Partner for . . . liabilities incurred . . . in connection with or resulting from . . . any decisions made by, or actions taken or not taken by, the General Partner or its Affiliates, so long as [they] . . . acted in good faith and in a manner [they] reasonably believed to be in, or not opposed to, the best interests of the Partnership and [their] conduct did not constitute gross negligence, fraud, or willful or wanton misconduct.[76]

The Complaint, per the Defendants, does not state a claim for bad faith against GPB or Gentile. And fourth, the Defendants argue that no breach of fiduciary duty has occurred—and therefore no aiding and abetting can have occurred—because GPB's duty to disclose financial statements is a contractual duty rather than a fiduciary one.

I find none of these arguments persuasive and conclude that it is reasonably conceivable that GPB has breached its fiduciary duties to the Partnerships. I further find it reasonably conceivable that Gentile, as the undisputed controller of GPB, owes fiduciary duties to the Partnerships because it is reasonably conceivable that he exercised control over the Partnerships' assets. Finally, I find it reasonably conceivable that Schneider and Lash knowingly participated in Gentile's alleged

---

[76] Def. Jeffry Schneider's Opening Br. in Supp. of Mot. To Stay or Dismiss 22 ("Schneider Opening Br."), Dkt. No. 27.

breaches of fiduciary duty. Accordingly, the Defendants' Motions to Dismiss the substantive counts are denied.[77]

## A. Demand is excused as to all the Defendants.

Under 6 *Del. C.* § 17-1001, a limited partner seeking to proceed derivatively must make a demand on the general partner to pursue the claim, unless such a demand would be "not likely to succeed." The Defendants collectively argue that demand is not excused because the Plaintiffs have failed to make "any allegations as to the management of GPB . . ., its officers or its management committees."[78] They contend that the Plaintiffs' allegations regarding demand futility "are too general and conclusory to satisfy Delaware law."[79] In applying the demand requirement of the Limited Partnership Act, our courts have mined much of the rich vein of law existing in regard to the similar demand requirement imposed by Rule 23.1 in the corporate arena.[80] Pertinent here, to excuse demand on a general partner on futility grounds, supportive facts (like those sufficient to excuse demand under Rule 23.1) must be pled "with particularity;"[81] conclusory assertions are insufficient to sustain the

---

[77] The Plaintiffs also sought declaratory relief. Compl. ¶ 79. Because that relief is duplicative of the counts alleging breaches of fiduciary duty, I dismiss the count for declaratory judgment without prejudice, Section II.D. *infra*.

[78] Schneider Opening Br. 17.

[79] The GPB Defendants' Opening Br. in Supp. of their Mot. To Dismiss or Stay ("GPB Opening Br.") 18, Dkt. No. 28.

[80] *See, e.g.*, *Seaford Funding Ltd. P'ship v. M&M Assocs. II, L.P.*, 672 A.2d 66, 70 (Del. Ch. 1995) ("[C]orporate standards apply to limited partnerships in the 'demand excused' analysis.").

[81] 6 *Del. C.* § 17-1003.

burden. There are differences in the application of the two demand requirements, however, as I address below.

The Complaint alleges that demand would be futile here. The Defendants argue that the allegations lack specificity, in that they omit details about how the general partner is managed. The Defendants suggest that I import corporate demand law, which in this situation would require that I employ the test set out by our Supreme Court in *Rales v. Blasband*: could those who direct the entity bring their business judgment to bear on behalf of the entity in considering the demand at issue?[82] Because the Complaint omits the details of how GPB is managed, the Defendants contend that the Plaintiffs cannot meet their burden to demonstrate that it is reasonably conceivable that demand is futile. The arguments of the Defendants, however, fail to note that demand here would be made on the entity, GPB, and *not* its directors or managers.[83] They also omit two important details pled in the complaint: (i) GPB is wholly owned and therefore controlled by Gentile, its CEO, and (ii) Gentile is alleged, with particularity, to have wrongfully diverted funds of the partnerships to himself and the other individual defendants.

---

[82] 634 A.2d 927, 934 (Del. 1993) ("[A] court must determine whether or not the particularized factual allegations of a derivative stockholder complaint create a reasonable doubt that, as of the time the complaint is filed, the board of directors could have properly exercised its independent and disinterested business judgment in responding to a demand.").

[83] *Gotham v. Hallwood Realty Partners, L.P.*, 1998 WL 832631, at \*5 (Del. Ch. Nov. 10, 1998).

Before proceeding with this analysis, it is worth noting that, although Gentile is implicated in the demand futility analysis, had the Plaintiffs sought to make a demand, that demand would not be made upon Gentile himself, nor upon the managers of GPB. Where the general partner of a partnership is an entity rather than a person, "it should be sufficient to make the demand upon the general partner, whatever its form."[84] After all, "it is the general partner who owes the limited partners fiduciary duties, not the management of the general partner, even though they make the decisions for that business entity."[85] Thus, "in the case of a corporate [or other entity] general partner, the demand excusal inquiry focuses on the general partner itself (as an entity)," and not on those who direct corporate affairs.[86]

Why should this be? Demand in the corporate context is on a board composed of human beings, each of whom is presumed to be acting in the corporate interest, but each liable to self-interest and divided loyalties that may cause the board to be unable to bring its business judgement to bear, excusing demand. With respect to general partners of limited partnerships, these are—not always, but typically—*entities themselves*. Here, the general partner is a limited liability company. Such entities have no lusts to slake, no egos to protect, no dreams of wealth or power and no sense of duty to others. Their existence is solely maintained by the human beings

---

[84] *Id.*

[85] *Id.*

[86] *Wenske v. Blue Bell Creameries, Inc.*, 2018 WL 3337531, at *18 (Del. Ch. July 6, 2019).

who control them.  Because the Plaintiffs have failed to allege who those managers are, or any specific reasons they would be unable to bring their business judgment to bear upon demand, the Defendants argue that the Complaint fails to satisfy *Rales*. But this argument misses the mark.  *GPB* is the general partner whose fiduciary duty runs to the Partnerships.[87]  The mangers of GPB, in contrast, owe duties *to GPB* and its beneficial owner, *not* the Partnerships.  If GPB (or Gentile) has a substantial risk of liability or harm from the pursuit of this litigation, GPB's managers cannot be expected, in light of their duty to GPB, to cause GPB to approve the litigation upon Plaintiffs' demand.  That is why the focus must be on the entity general partner, and not its directors or managers.[88]

However, whether demand on GPB is excused depends on whether the Plaintiffs have "pled particularized facts raising a pleading-stage doubt about the independence" of GPB.[89]  Gentile is the sole member—and therefore controller—of GPB.[90]  By definition, then, GPB is not independent of Gentile.  This would be of

---

[87] *See Gotham*, 1998 WL 832631, at *5 ("[I]t is the general partner who owes the limited partners fiduciary duties, not the management of the general partner, even though they make the decisions for that business entity.").

[88] *Id.* (rejecting the "proposed rule" that the Court should consider the "form of entity of each general partner in order to determine whether the entity's internal decision making individuals . . . were independent" because it "looks *not to the person owing the fiduciary duty*, but to individuals who make decisions in that entity's best interest" (emphasis added)).

[89] *Delaware Cty. Employees Ret. Fund v. Sanchez*, 124 A.3d 1017, 1020 (Del. 2015) (internal quotation marks omitted).

[90] *Kahn v. Lynch Commc'n Sys., Inc.*, 638 A.2d 1110, 1113 (Del. 1994) (noting that a shareholder is "only" a controller "if it owns a majority interest in or exercises control over the business affairs of the corporation" (emphasis removed)).

no moment if the Complaint had nothing to do with Gentile. But that is not the case—indeed, Gentile's conduct, which includes exercising control of the Partnerships through GPB, is at the very heart of the Plaintiffs' Complaint.

"A general partner has 'a disabling interest for pre-suit demand purposes' when it faces a 'substantial likelihood' of liability in connection with the derivative claim(s) asserted against it."[91] The same can be said for general partners controlled by individuals or entities that face a substantial likelihood of liability in connection with such claims. Here, the Plaintiffs have alleged that Gentile engaged in self-dealing conduct that harmed the Partnerships. Those specific self-dealing-conduct allegations are not unique to this case—indeed, they appear in at least three different litigations where Gentile is a defendant and which are incorporated into the Complaint: the DiBre Counterclaim, the Rosenberg Complaint, and the Massachusetts Enforcement Complaint. The allegations in these three cases complement each other.[92] For example, the Complaint alleges, by reference to the DiBre Counterclaim, that "Gentile and Schneider created an entity, LSG, to which they directed more than $4 million from reinsurance funds and manufacturer rebates that should have gone to dealerships and ultimately to the Partnerships."[93] Similarly,

---

[91] *Wenske*, 2018 WL 3337531, at *18 (quoting *Ryan v. Gifford*, 918 A.2d 341, 355 (Del. Ch. 2007)).

[92] At least one of these pleadings is accompanied by a verification attesting to the accuracy of the facts alleged.

[93] Compl. ¶ 17.

the Complaint notes that the Rosenberg Complaint alleges that "[d]ealership funds have also been siphoned off to LSG Auto Wholesale, an entity named for L̲ash, S̲chneider (a close associate of Gentile), and G̲entile."[94] And the Massachusetts Enforcement Complaint alleges that "LSG Auto (owned partially by Gentile and Lash), received payments from GPB Capital-owned dealerships, without ever disclosing this fact to investors." [95]

Thus, any litigation—including the litigation before me—aimed at determining whether those allegations are true could lead to liability in *all* litigations where Gentile may be liable for that conduct. If these allegations prove true, Gentile faces a substantial likelihood of liability, which in turn makes prosecution of this matter by a Gentile-controlled entity problematic.[96] It is reasonably conceivable that GPB is unable to evaluate a demand using its business judgment, because the litigation that the Plaintiffs advocate risks substantial liability against its controller. Although the Plaintiffs' demand would be made on GPB, Gentile's control of GPB and his substantial likelihood of liability stemming from the Complaint and those facts that may come to light in this litigation are particularized allegations that make it reasonably conceivable that GPB would be unable to exercise its business

---

[94] Compl. ¶ 20.
[95] Mass. Enforcement Compl. 7–8.
[96] The Defendants' rebuttal regarding the Partnerships' Limited Partnership Agreements does not persuade me that Gentile will not face a substantial likelihood of liability for reasons addressed in part II.B.1. *infra*.

23

judgment with regards to any demand made in connection with the Plaintiffs' allegations.

The allegations of the Complaint also involve GPB directly. The Complaint alleges that GPB has refused to provide financial reporting called for in its formative documents. The Defendants contend that this is merely a contractual obligation running directly to the limited partners, and not a part of any demand in way of derivative litigation. But the Complaint goes beyond that—it alleges that the repeated failures to provide required financials are part of a scheme to hide the financial depredations to the Partnerships wreaked by Gentile and his confreres.[97] The duty to disclose may be contractual, but a disloyal or grossly negligent failure to meet that contractual obligation invokes fiduciary duties.

Demand is also futile as to Gentile's alleged associates, Lash and Schneider. Lash and Schneider are alleged to have aided and abetted Gentile's and GPB's breaches of fiduciary duty; thus, a finding of liability for them is conditioned on liability for Gentile and GPB. Because GPB is unable to exercise its business judgment with regards to its own or Gentile's potential liability, it is reasonably conceivable that third-party liability conditioned on such liability is also not a possibility GPB can consider in the exercise of its business judgment.

---

[97] Compl. ¶ 23.

The Defendants make much of our precedent stating that demand "is not excused solely because the directors would be deciding to sue themselves."[98] True. Departure from this rubric would make allegations that demand is excused self-proving. But such language must work in tandem with the well-established rule that "[a] general partner has 'a disabling interest for pre-suit demand purposes' when it faces a 'substantial likelihood' of liability in connection with the derivative claim(s) asserted against it."[99] Departure from *this* rubric would render faithless fiduciaries immune to judicial review. This is not a case where demand is being excused solely because GPB is a named defendant. Here, the Complaint directly implicates conduct by GPB and its controller, Gentile, in tandem with Lash and Schneider, which could result in a substantial likelihood of liability for Gentile, in this case or in combination with others. Accordingly, demand is excused.

*B. The Plaintiffs have stated a claim for breach of fiduciary duty against GPB and Gentile.*

I pause here to address the Defendants' argument that the Complaint is improperly regurgitating allegations in other pleadings. Without addressing the logical or persuasive force of allegations incorporated by reference, I first note that, under Delaware Court of Chancery Rule 10, "[s]tatements in a pleading may be

---

[98] Schneider Opening Br. 19 (quoting *In re Citigroup Inc. S'holder Deriv. Litig.*, 964 A.2d 106, 121 (Del. Ch. 2009)).

[99] *Wenske v. Blue Bell Creameries, Inc.*, 2018 WL 3337531, at *18 (quoting *Ryan v. Gifford*, 918 A.2d 341, 355 (Del. Ch. 2007)).

adopted by reference in a different part of the same pleading *or in another pleading or in any motion.*"[100]   Second, I need not address the full effect of allegations incorporated by reference in this matter, given that we are at the Motion to Dismiss stage and the Complaint need only give the Defendants notice of the claims against them.[101]   As explained above, with regards to demand futility, the existence of several other litigations that specifically allege Gentile's self-dealing operation of GPB's portfolio companies means Gentile's exposure to potential liability from those allegations is not insignificant, implicating GPB's ability to respond to a demand.   With regards to the Motions to Dismiss for failure to state claims of breaches of fiduciary duty under Rule 12(b)(6), the need for specific pleading is absent.[102]   The complaint must simply allege facts that, if true, and together with the reasonable inferences therefrom, make it reasonably conceivable that the elements of breach of fiduciary duty are met: that a defendant was bound by such duty, and breached it.   Here, GPB is a general partner and owes fiduciary duties to the limited partners.   The remaining question is allegations of breach.   I need not give the incorporated allegations the full force of allegations made from the Plaintiffs' own

---

[100] Emphasis added.

[101] *Malpiede v. Townson*, 780 A.2d 1075, 1083 (Del. 2001) (The motion to dismiss "standard is based on the 'notice pleading' requirement established in Ct. Ch. R. 8(e) and is 'less stringent than the standard applied when evaluating whether a pre-suit demand has been excused in a stockholder derivative suit filed pursuant to Chancery Rule 23.1.'") (quoting *Solomon v. Pathe Commc'ns Corp.*, 672 A.2d 35, 38 (Del. 1996)).

[102] *Id.*

knowledge to find that the incorporated allegations were sufficient to allege breaches of duty, and to fulfill the notice function of the Complaint by putting the Defendants on notice of the allegations against them. Accordingly, I need not decide whether to give full weight to the incorporated allegations. I find the Complaint sufficient to state a claim under Court of Chancery Rule 12(b)(6).

### 1. The Limited Partnership Agreements of the Partnerships do not limit liability for all breaches of fiduciary duty except bad faith.

The Defendants make one overarching defense regarding liability for breaches of fiduciary duty: notwithstanding that the general fiduciary duties inhere in the General Partner, the Partnerships' Limited Liability Agreements contain damages exculpation provisions for breaches of fiduciary duty by GPB and its affiliates. As I stated above, that provision, which is the same in both Auto and Holdings II's Limited Partnership Agreements, provides that

> [t]he General Partner and its Affiliates shall not be liable to the Partnership or any Partner for . . . liabilities incurred . . . in connection with or resulting from . . . any decisions made by, or actions taken or not taken by, the General Partner or its Affiliates, so long as [they] . . . acted in good faith and in a manner [they] reasonably believed to be in, or not opposed to, the best interests of the Partnership and [their] conduct did not constitute gross negligence, fraud, or willful or wanton misconduct.[103]

---

[103] Schneider Opening Br. 22.

The Defendants point out that this safe harbor applies to the actions of Gentile; because he controls GBP, he is a designated "affiliate" of GPB under the LPA.[104] The Defendants argue that this limitation means that they cannot be liable unless the Plaintiffs allege and make a reasonably conceivable showing of bad faith, which (per the Defendants) they have not done. I disagree with this interpretation of the Limited Partnership Agreements. First, the Defendants' interpretation would cause the entire provision after the term "acted in good faith" to be surplusage—and I must avoid a construction that renders contractual language meaningless or surplusage.[105] Second, the Defendants appear to be confusing the conjunctive nature of the provision's conditions precedent for a disjunctive one; their interpretation, as I understand it, is that liability is limited if the conduct is in good faith *or* in a manner that is not opposed to the best interests of the Partnership, *or* not grossly negligent, fraudulent, or willful or wanton misconduct. They thus arrive at a much more expansive limitation on liability. But that is not what the provision says.

Indeed, a plain reading of the provision shows that the provision's limitation on liability applies only when *all three* conditions are met, instead of requiring only one condition. Specifically, in order for the provision to take effect, the liability must

---

[104] DeFelice Decl., Ex. A at 4; *see* David Gentile's Reply Joinder in support of Mot. To Stay or Dismiss and Reply Br. in support of Mot. To Stay or Dismiss 6, Dkt. No. 57.

[105] *Sunline Commercial Carriers, Inc. v. CITGO Petroleum Corp.*, 206 A.3d 836, 846 (Del. 2019) ("The contract must also be read as a whole, giving meaning to each term and avoiding an interpretation that would render any term 'mere surplusage.'").

be in connection to actions taken "in good faith *and* in a manner . . . reasonably believed to be in, or not opposed to, the best interests of the Partnership *and*" the actions must "not constitute gross negligence, fraud, or willful or wanton misconduct." In other words, although the Defendants are correct that the safe harbor provision does not exculpate liability connected to actions taken in bad faith, they are not correct that bad faith actions are the *only* conduct to which exculpation will not apply. For example, because one of the three conditions precedent is that the actions "must not constitute gross negligence," liability stemming from grossly negligent conduct would also not be eliminated.

Nor can it be said that the three conditions precedent all mean the same thing—*i.e.*, no bad faith. It is well-settled under Delaware law that gross negligence is not bad faith.[106] Here, the alleged wrongdoings include the extraction of wealth from the Partnerships and to the controller. By definition, such extraction is opposed to the best interests of the Partnerships and fails to satisfy the conditions precedent to the limitation on liability provision.[107]

---

[106] *In re Walt Disney Co. Derivative Litig.*, 906 A.2d 27, 64–65 (Del. 2006) ("[T]o afford guidance[,] we address the issue of whether gross negligence (including a failure to inform one's self of available material facts), without more, can also constitute bad faith. The answer is clearly no.").

[107] In any event, if, as alleged, Gentile intentionally looted the partnerships, and used his control over GPB to cause it to cease financial reporting to cover up his malfeasance, those cannot be actions in good faith.

## 2. The Plaintiffs have stated a claim for breach of fiduciary duty against GPB.

Next, the Defendants argue that the Plaintiffs have failed to state a claim for breach of fiduciary duty against GPB. They contend that the only allegations regarding GPB's conduct "are centered around . . . [GPB's] alleged failure to provide audited financial statements or alleged misstatements within the financials."[108] Such claims, according to the Defendants, are breach of contract claims because the duty to provide audited financial statements is provided for in the Partnerships' Limited Partnership Agreements.[109] For their part, the Plaintiffs contend that GPB has breached more than a contractual duty to provide audited financial statements—they contend that GPB has engaged in self-dealing at the direction of Gentile.[110]

I agree with the Plaintiffs' characterization of the Complaint. First, the allegations regarding financial statements go beyond simply failure to meet contractual duties: the reasonable inference from the Complaint is that Gentile caused the Partnerships to promise an 8% annual return on investment, and that he and his associates diverted funds belonging to the Partnerships rendering that impossible. Accordingly, Gentile and GPB were reduced to employing the left-handed Ponzi scheme of paying contributions out of the limited partners' capital

---

[108] Schneider Opening Br. 20–21; *see* GPB Opening Br. 20–21.
[109] Schneider Opening Br. 20–21; *see* GPB Opening Br. 20–21.
[110] Compl. ¶¶ 3, 17, 20–21.

30

account to preserve the façade of profitability, to the detriment of the Partnerships. Ultimately, GPB had to breach its financial reporting requirements to conceal the foregoing and permit it to continue. These are not actions taken in good faith or in the interest of the partnership.

Second, the Defendants ignore the fact that Gentile—the sole owner and CEO—controls GPB as a matter of Delaware law. To the extent that Gentile engaged in self-dealing transactions or transactions that were opposed to the Partnerships' best interests, GPB would have been the vehicle through which Gentile operated and GPB would have breached its fiduciary duties by virtue of allowing Gentile to use it in that manner. The allegations that Gentile caused GPB to act against the best interests of the Partnerships are reasonably conceivable based on the Complaint.

### 3. The Plaintiffs have stated a claim for breach of fiduciary duty against Gentile.

As to Gentile, the Defendants argue that he does not owe any fiduciary duties to the Partnerships because the "Plaintiffs make no attempt to plead that Mr. Gentile in fact exerted control over the assets of Automotive or Holdings II, much less that he used that control to his own benefit at the expense of the partnerships."[111] The Plaintiffs counter that Gentile's position—that a general partner's controller does

---

[111] Def. David Gentile's Joinder in Br. in Supp. of Mot. To Stay or Dismiss and Opening Br. in Supp. of Mot. To Stay or Dismiss 4 ("Gentile Opening Br."), Dkt. No. 30.

not owe fiduciary duties to the limited partnership unless the controller exerts control over the limited partnership's assets—is "wrong as a matter of law."[112]

Preliminarily, I note that the Plaintiffs' statement that "'[u]nder settled precedent,' such controlling persons [as officers of a general partner] *are deemed* 'fiduciaries of the limited partners, and subject to liability for implementing unfair, self-dealing transactions'"[113] overstates then-Vice Chancellor Strine's opinion, which it cites. That case, *Gotham Partners, L.P. v. Hallwood Realty Partners, L.P.*, when quoted in full, states that "[u]nder settled precedent, directors of corporate general partners of limited partnerships *have been held to be* fiduciaries of the limited partners, and subject to liability for implementing unfair, self-dealing transactions."[114] *Gotham Partners* does not say that such controllers "are deemed" fiduciaries; it only says they have been so deemed in some precedent cases—in other words, where adequate allegations of wrongful exercise of control exist.

However, I conclude at this pleading stage that Gentile does indeed owe fiduciary duties to the Partnerships and that it is reasonably conceivable that he violated them. "Under the . . . largely unquestioned precedent of *USACafes*,"[115] "a corporate general partner's fiduciary duties to the limited partnership may extend to

---

[112] Pls.' Omnibus Answering Br. in Opp'n to Defs.' Mots. To Dismiss and Mots. To Stay 48 (Pls.' Answering Br."), Dkt. No. 36.

[113] Pls.' Answering Br. 47 (emphasis added).

[114] 795 A.2d 1 (Del. Ch. 2001) (emphasis added).

[115] *Gotham Partners, L.P. v. Hallwood Realty Partners, L.P.*, 2000 WL 1476663, at *19 (Del. Ch. Sept. 27, 2000).

the general partner's controllers, *if such persons exercise control over the limited partnership's property*."[116]   Contrary to Gentile's Opening Brief, which claims the Complaint "makes no attempt to plead" control over the Partnership's assets, the Complaint alleges that "Gentile and Schneider created an entity, LSG, to which they directed more than $4 million from reinsurance funds and manufacturer rebates *that should have gone* to dealerships and *ultimately to the Partnerships*."[117]   That allegation, if true, would mean Gentile exercised control over funds that belonged to the Partnerships and thus owed fiduciary duties to the Partnerships—control that I must infer at this pleading stage that he asserted by using GPB's position as the Partnerships' general partner.   This Court has held in the corporate context that "[l]iability for breach of fiduciary duty . . . extends to outsiders who effectively controlled the corporation."[118]   The same follows for limited partnerships—those who effectively control a partnership, via control of its assets, owe fiduciary duties to the entity.[119]

---

[116] *Wenske v. Blue Bell Creameries, Inc.*, 2018 WL 3337531, at \*17 (Del. Ch. July 6, 2018) (citing *In re USACafes, L.P. Litig.*, 600 A.2d 43 (Del Ch. 1991) (emphasis added)).

[117] Compl. ¶ 17 (emphasis added).  Most of the allegations in the Complaint concern self-dealing using assets of GPB-owned entities without specifying which entity. However, at this stage of the proceedings, such allegations are sufficient, to my mind, to show a reasonable conceivability that the Defendants may have engaged in self-dealing using assets of the Partnerships.

[118] *In re Ezcorp Inc. Consulting Agreement Derivative Litig.*, 2016 WL 301245, at \*9 (Del. Ch. Jan. 25, 2016).

[119] *USACafes*, 600 A.2d at 48 ("I understand the principle of fiduciary duty, stated most generally, to be that one who controls property of another may not, without implied or express agreement, intentionally use that property in a way that benefits the holder of the control to the detriment of the property or its beneficial owner.").

The Complaint has incorporated pleadings that allege that Gentile engaged in several self-dealing transactions, including siphoning $4 million in funds into LSG, transferring $201,706 to other entities under his control, and diverting $2,000,000 in revenue to entities under his control under the guise of management fees.[120] Such allegations are sufficient to support a reasonable conceivability that Gentile exercised control over the assets of the Partnerships via his control of GPB and accordingly owes the Partnerships fiduciary duties. Further, those same allegations of self-dealing extraction of the Partnerships' assets are sufficient to show a reasonable conceivability that Gentile has breached his fiduciary duties to the Partnerships.

*C. The Plaintiffs have stated a claim for aiding and abetting a breach of fiduciary duty against Schneider and Lash.*

For an aiding and abetting claim to survive a motion to dismiss, the Complaint must allege facts that show a reasonable conceivability of: "'(1) the existence of a fiduciary relationship, (2) a breach of the fiduciary's duty, . . . (3) knowing participation in that breach by the defendants,' and (4) damages proximately caused by the breach."[121] I have already found it reasonably conceivable that both GPB and Gentile owed and breached fiduciary duties to the detriment of the Partnerships,

[120] Compl. ¶¶ 17, 20.
[121] *Malpiede v. Townson*, 780 A.2d 1075, 1096 (Del. 2001) (quoting *Penn Mart Realty Co. v. Becker*, 298 A.2d 349, 351 (Del. Ch. 1972)).

satisfying elements (1), (2), and (4). The third element, "knowing participation," is commonly described as having two prongs: knowledge and participation. In other words, the Plaintiffs must show *scienter—i.e.*, that it is reasonably conceivable that "the alleged aider and abettor knew that the fiduciary [was] breaching his fiduciary duty and then . . . participate[d], in some way, in that breach."[122] This pleading requirement is stringent. It prevents exposing to liability those who innocently deal with a faithless fiduciary.[123]

The Plaintiffs have alleged that Lash and Schneider both participated in at least one of Gentile's self-dealing transactions. Specifically, Lash is alleged to have "funneled nearly $2,000,000 in revenue to entities [Gentile and Lash] controlled, including some under the guise of 'management fees.' For the year 2015, $201,7076 [*sic*] was transferred to Emdykycol, Inc. . . . . Upon information and belief, Emdykycol, Inc. is owned by Lash and . . . Gentile."[124] And Schneider is alleged to have "created an entity, LSG, to which [he and Gentile] directed more than $4 million from reinsurance funds and manufacturer rebates that should have gone to

---

[122] *In re Xura, Inc. Stockholder Litig.*, 2019 WL 3063599, at *3 (Del. Ch. July 12, 2019).

[123] For example, this Court has previously noted that "arm's-length bargaining is privileged and does not, absent actual collusion and facilitation of fiduciary wrongdoing, constitute aiding and abetting." *Morgan v. Cash*, 2010 WL 2803746, at *8 (Del. Ch. July 16, 2010). This "long-standing rule . . . helps to safeguard the market for corporate control by facilitating the bargaining that is central to the American model of capitalism." *Id.*

[124] Compl. ¶ 20.

dealerships and ultimately to the Partnerships."[125] Accordingly, the participation prong of the third element of aiding and abetting is satisfied.

Whether Lash and Schneider are alleged to have known about the fiduciary duty breach requires closer analysis. Schneider, at least, is alleged to have been heavily involved in the marketing of GPB's dealerships, which may have included the Partnerships, at the direction of Gentile.[126] According to the allegations of the Massachusetts Enforcement Complaint, "[t]he line between Gentile, Schneider, GPB . . . , and Ascendant Alterative Strategies and Ascendant Capital is blurred beyond recognition. The firms even share office space in Austin, Texas. The only difference between GPB Capital and the Ascendant entities is the e-mail addresses used. Gentile profited directly whenever GPB . . . paid Ascendant Alternative Strategies selling commissions."[127] Schneider's involvement at Gentile's request and his alleged involvement with GPB make it reasonably conceivable—at this pleading stage—that he both knew that Gentile owed fiduciary duties to the limited partnerships Schneider was marketing and knew that Gentile was breaching those duties. Lash, on the other hand, was directly employed by GPB; by dint of his employment, he would have known that Gentile controlled GPB and through it, the

---

[125] Compl. ¶ 17.
[126] Mass. Enforcement Compl. 3.
[127] Mass. Enforcement Compl. 4.

36

Partnerships, and thus would have owed fiduciary duties and was breaching them.[128]

While the *scienter* pleading requirement is stringent, at the motion-to-dismiss stage, all reasonable inferences must be drawn in favor of the Plaintiffs.[129] Accordingly, I conclude that Lash's employment by GPB and Schneider's involvement with GPB create a reasonable conceivability that they knew that Gentile owed fiduciary duties to the Partnerships, he was breaching those duties by self-dealing, and they participated in those breaches.

> *D. The Plaintiffs' request for declaratory judgment is redundant and is dismissed without prejudice.*

The Plaintiffs request a declaration from this Court that "GPB has engaged in gross negligence or willful misconduct which has had a material effect on the Partnerships."[130] They seek this declaration because the Limited Partnership Agreements of the Partnerships provide that the limited partners may vote to remove the General Partner after a judicial finding of such conduct.[131] However, both the gross negligence and willful misconduct alleged in this case, if they had material effects on the Partnerships, would involve breaches of fiduciary duties.

"Declaratory Judgment is a statutory action; it is meant to provide relief in situations where a claim is ripe but *would not support an action under common-law*

---

[128] Compl. ¶ 13; *see* Mass. Enforcement Compl. 5.

[129] *Cent. Mortg. Co. v. Morgan Stanley Mortg. Capital Holdings LLC*, 27 A.3d 531, 536 (Del. 2011).

[130] Compl. ¶ 78.

[131] Compl. ¶77.

*pleading rules*."[132]  That is not the case here.  Any finding of gross negligence or willful misconduct here would be congruent with the elements of the fiduciary duty claims I have found adequately alleged.  The declaratory judgment count is thus duplicative of the breach of fiduciary duty counts, and is dismissed.

## III. CONCLUSION

The Defendants' Motions to Dismiss are DENIED in part and GRANTED in part.  The parties should submit a form of order consistent with this Memorandum Opinion.

---

[132] *Great Hill Equity Partners IV, LP v. SIG Growth Equity Fund I, LLLP*, 2014 WL 6703980, at *29 (Del. Ch. Nov. 26, 2014) (emphasis added).